■ CLARK-FITZPATRICK, INC., Appellant, v LONG ISLAND RAIL ROAD COMPANY, Respondent, et al., Defendant.

This action arises out of a $9,500,000 track-improvement project undertaken by the defendant Long Island Rail Road Company (hereinafter LIRR). Involved in said project is the improvement of the Port Jefferson line by the addition of a second railroad track between Amott and Huntington. A construction plan involving numerous technical drawings and specifications was prepared by the LIRR, and submitted for public bid. On July 19, 1983, the plaintiff Clark-Fitzpatrick was awarded the contract which provided for a September 26, 1985, completion date. The plaintiff commenced this action in November 1984 and served an amended complaint in August 1985 pleading causes of action sounding in breach of contract, quasi contract, fraud, misrepresentation and deceit, gross negligence and reckless disregard of a duty of care, and negligence. The plaintiff seeks $3,000,000 compensatory damages and $2,000,000 punitive damages. It alleged that, after work was begun, it discovered that the LIRR was unprepared to proceed with the construction because, among other things, it had provided faulty engineering plans and failed to acquire certain properties abutting the construction sites. The plaintiff further alleged that the LIRR entered into the contract fully aware of such deficiencies.

The LIRR moved, pursuant to CPLR 3211 (a) (7), to dismiss

the causes of action sounding in quasi contract, gross negligence and reckless disregard of a duty of care, negligence, and the demand for punitive damages. The motion was granted in its entirety by order entered December 19, 1985, and this appeal ensued.

The plaintiff's cause of action sounding in quasi contract was properly dismissed. Where an express contract exists between the parties, recovery under a quantum meruit theory is precluded *(Farm Automation Corp. v Senter,* 84 AD2d 757; *Levi v Power Conversion,* 47 AD2d 543). The plaintiff's work and services, performed pursuant to change orders issued by the LIRR, were specifically covered under the contract and, therefore, the plaintiff must sue to recover damages for the breach of the contract itself *(see, Cannon v First Natl. Bank,* 98 AD2d 704, *affd* 62 NY2d 1003).

The plaintiff's causes of action sounding in negligence were also properly dismissed. In the absence of an independent tort duty, the plaintiff is limited to its contractual remedies *(see, Luxonomy Cars v Citibank,* 65 AD2d 549, 550). The plaintiff claims that the LIRR's failure to perform its own duty under the contract in a reasonable manner resulted in increased costs, thereby damaging the plaintiff. The contract between the parties provided that the LIRR had the right to issue change orders and a method of compensation for any changes. Thus, the duty of the LIRR to adequately compensate the plaintiff for its losses arose from the contract.

Additionally, we conclude that punitive damages arising out of an action on a contract may not be imposed against the LIRR. The Court of Appeals held in *Sharapata v Town of Islip* (56 NY2d 332), that the waiver of sovereign immunity effected by Court of Claims Act § 8 does not permit the assessment of punitive damages against the State or its political subdivisions *(Sharapata v Town of Islip, supra,* p 334). The court initially noted the important distinctions between compensatory damages, which are based upon the fundamental purpose of having "the wrongdoer make the victim whole" and punitive or exemplary damages which are intended "to punish the tortfeasor for his conduct and to deter him and others like him from similar action in the future" *(Sharapata v Town of Islip, supra,* p 335). These distinctions became important with respect to the State when it waived its general immunity from liability by the adoption of Court of Claims Act § 8 which further provided for the State's assumption of liability and consent to have such " 'determined in accordance with the same rules of law as applied to actions in the supreme court

against individuals or corporations' " *(Sharapata v Town of Islip, supra,* p 336). In addition to the requirement that that section must be strictly construed, it being in derogation of the State's sovereignty, public policy considerations were found to operate against the imposition of punitive damages on municipal corporations as opposed to private corporations. In citing *Costich v City of Rochester* (68 App Div 623, 631), the Court of Appeals indicated a basis for such a distinction: " 'the latter [private entities] are largely created and administered for purposes of profit or for some other personal object. Those who become members of them do so voluntarily, and in the majority of instances in the hope of gain * * * the municipal corporation is different. It is not organized for any purpose of gain or profit, but it is a legal creation engaged in carrying on government and administering its details for the general good and as a matter of public necessity' " *(Sharapata v Town of Islip, supra,* p 337).

The policy that public funds are not to be either directly or indirectly available for payment of damages beyond those actually suffered, that is, compensatory purposes only, has been consistently reaffirmed in legislative enactments *(Sharapata v Town of Islip, supra,* p 338). Since the justifications for punitive damages—punishment and deterrence—would not be advanced if applied to a governmental unit, it was found that such damages may not be assessed against the State or its political subdivisions *(Sharapata v Town of Islip, supra,* p 334).

As to whether or not the LIRR is specifically a political subdivision of the State of New York, this court previously stated: "The LIRR operates railroad lines in New York City and Nassau and Suffolk Counties primarily carrying commuting passengers between their jobs in the city and their homes in the suburbs. In addition, the LIRR carries a relatively small amount of freight. While it is true that a substantial number of the people of the State of New York benefit from the services offered by the LIRR, the case at bar presents a stronger case than the *Grace* case ([44 NY2d 84] supra) for holding that *the public benefit corporation in question is not a political subdivision of the State because it can hardly be said that the petitioner is engaged in operations which are fundamentally governmental in nature. Manifestly, the LIRR enjoys a separate existence from the State pursuant to which it transacts its own nongovernmental business and hires, compensates and fires its own personnel"* (Long Is. R. R. Co. v Long Is.

*Light Co.,* 103 AD2d 156, 164-165, *affd* 64 NY2d 1088 [emphasis added]).

The LIRR's status is that of a public benefit corporation which is a subdivision of the Metropolitan Transportation Authority (hereinafter the MTA) *(see,* Public Authorities Law § 1266 [5]).

The issue before this court, however, is not fully determined by such a finding. It now becomes necessary to determine whether such a public benefit corporation is so imbued with the identity of the State as to be considered an integral part thereof so that it qualifies for the exemption from the imposition of punitive damages. A particularized inquiry should be utilized, taking into account the nature of the instrumentality, any applicable statutes and the context of the case *(see, Grace & Co. v State Univ. Constr. Fund,* 44 NY2d 84, 88). Such an inquiry here necessitates that one look to the source of funding for the LIRR and its construction projects. This is so since the rationale for not permitting punitive damages to be assessed against the State or its political subdivisions is that the persons who would bear the burden of the punishment would be the taxpayers *(see, Sharapata v Town of Islip, supra,* p 338; *see also, Newport v Fact Concerts,* 453 US 247, 267).

A review of the record indicates that in 1984 the LIRR financed approximately 51% of its total expenses from passenger revenues and about 49% from outside subsidies, mostly derived from Federal, State and local taxpayer dollars. A majority of the funds allocated for this particular project are part of a grant to the LIRR from the Urban Mass Transportation Administration which is part of the United States Department of Transportation. Other funds come via a direct grant by the State payable from tax money. Although the plaintiff alleges that the LIRR has available to it billions of dollars in private funds from bonds and notes issued under the Transportation Systems Assistance and Financing Act (L 1981, ch 314), that act merely authorizes the MTA and its subsidiaries to issue up to $3.2 billion in notes and bonds for the financing of improvements in mass transportation systems. There is nothing in the record that establishes that these bonds were, in fact, issued or how much of the capital derived from any such issuance was allocated to the LIRR.

Moreover, the LIRR is a subsidiary corporation of the MTA. In the enabling statute creating MTA, it was declared that: "such purposes are in all respects for the benefit of the people of the state of New York and the authority shall be regarded

as performing an essential governmental function in carrying out its purposes and in exercising the powers granted by this title" (Public Authorities Law § 1264 [2]).

In the Act creating the MTA, the legislative findings and declaration of purpose indicate that the MTA was created to take over the financially troubled commuter lines in the State of New York, including the then privately owned LIRR (L 1965, ch 324). Thus, the Legislature declared that, in order to insure a healthy economy for the State and the New York metropolitan area, the provision of adequate commuter facilities for the transportation of persons must be assured. Imposing punitive damages on the LIRR with respect to a construction contract would, therefore, financially burden the authority in carrying out a purpose deemed essential to the economic health of the State.

We find no merit in the plaintiff's argument that punitive damages may be imposed based upon *Transportation Union v Long Is. R. R. Co.* (455 US 678). In that case, the Supreme Court concluded that the LIRR should be treated like a private entity for purposes of regulation under the Federal Railway Labor Act *(Transportation Union v Long Is. R. R. Co., supra,* p 685). It was reasoned that "Federal regulation of state-owned railroads simply does not impair a state's ability to function as a state" *(Transportation Union v Long Is. R. R. Co., supra,* p 686). The court's decision was based upon a recognized need to inquire into the effect of Federal regulations upon the basic State prerogatives and there is nothing in that case which would affect the result in the case at bar. The opinion also elucidates the court's concern that, without Federal regulation of labor, collective bargaining might effectively be forestalled, possibly undermining the operation of the nation's railway system *(Transportation Union v Long Is. R. R. Co., supra,* p 688).

We find the LIRR to be so interrelated with the identity of the State as to require its exemption from the imposition of punitive damages. Therefore, the demand for punitive damages was properly dismissed. Mollen, P. J., Lazer, Thompson and Kunzeman, JJ., concur.