COGNOTEC SERVICES LTD., Plaintiff,

v.

MORGAN GUARANTY TRUST COMPANY OF NEW YORK and its subsidiary J.P. Morgan & Co., Incorporated, and John Doe 1 through John Doe 5, Defendants.

No. 93 Civ. 4878 (KTD).

United States District Court, S.D. New York.

Aug. 17, 1994.

Jacobson & Colfin, P.C., New York City, (Jeffrey E. Jacobson, Bruce E. Colfin, Todd A. Gordon, of counsel), for plaintiff.

O'Sullivan Graev & Karabell, New York City (Henry B. Gutman, J. Douglas Richards, Michele L. McNichol, of counsel), for defendants Morgan Guar. Trust Co. of New York and J.P. Morgan & Co. Inc.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Cognotec Services Ltd., ("Cognotec") commenced this action alleging that Morgan Guaranty Trust Company of New York ("Morgan"): (1) infringed Cognotec's copyright of a computer program named "AutoDealing"; (2) committed acts of unfair trade as prohibited by § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) breached a confidentiality agreement entered into by the parties during negotiations for the licensing of AutoDealing; and (4) were unjustly enriched by Cognotec's expertise and effort regarding AutoDealing.

Morgan now moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure and to strike from the amended complaint Cognotec's requests for statutory damages, punitive damages, and attorneys' fees pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. For the following reasons, Morgan's motion to dismiss is granted in part and denied in part, and its motion to strike is granted.

## THE AMENDED COMPLAINT[1]

Between 1989 and 1990, Cognotec developed and created a computer software program named "AutoDealing." The main function of this program is to enable a bank to offer automated foreign exchange service to its currency trading customers. (Am.Compl. ¶ 6). The AutoDealing program was copyrighted in the United Kingdom and has been registered in the United States. (Am.Compl. ¶¶ 7–10).

Morgan contacted Cognotec in 1992 to discuss licensing AutoDealing. (Am.Compl. ¶ 12). The parties held a series of detailed discussions and demonstrations of the program during which Morgan was given detailed product and program information. Morgan was also able to observe the program in operation. (Am.Compl. ¶¶ 13–16). Cognotec claims that Morgan represented that it expected to fully license AutoDealing from Cognotec during the summer of 1992. (Am.Compl. ¶ 14). Prior to any licensing, however, Morgan requested more information about the program. (Am.Compl. ¶ 16). Cognotec agreed to supply this information but only if a confidentiality agreement was executed.

Such an agreement was fully negotiated and executed by the parties on June 29, 1992. (Am.Compl. ¶¶ 17–18). After which, Cognotec supplied Morgan with over four hundred pages of information and analysis as well as details of the AutoDealing program. All of these documents were marked "Confidential." (Am.Compl. ¶¶ 19–20). In addition, Cognotec provided Morgan a draft of the proposed license agreement. (Am.Compl. ¶ 21). Upon Morgan's request, Cognotec also provided assistance by answering questions regarding the implementation of this program for use by Morgan. (Am.Compl. ¶ 22). Subject to the negotiation and execution of the final points of a licensing contract, AutoDealing's programmers specifications were made available to Morgan on October 26, 1992. (Am.Compl. ¶¶ 30–36).

On November 10, 1992, Morgan advised Cognotec that it would not execute a licensing contract but would instead seek bids from other software developers for a program that would service its currency trading customers. (Am.Compl. ¶ 38–39). As part of this effort, Cognotec issued a document entitled "Foreign Exchange Automated Negotiation System (FANS) Requirement Definition," dated November 18, 1992 to at least four software development companies (hereinafter the "FANS Requirement"). (Am. Compl. ¶ 40). Cognotec alleges that the FANS Requirement contains more than one hundred infringements of AutoDealing's core functions. (Am.Compl. ¶ 46).

Shortly after the issuing of the FANS Requirement, Cognotec made a "best and final offer," but this offer was rejected. (Am. Compl. ¶¶ 42–43). Moreover, Cognotec alleges that, based on the FANS Requirement, the software program that Morgan has developed copies AutoDealing, thereby infringing on Cognotec's copyright.

## DISCUSSION

### (1) Copyright Infringement

The crux of Cognotec's copyright claim is that Morgan became privy to protected information about AutoDealing. It then alleges that Morgan created the FANS Requirement, which describes what Morgan expects of a computer program to service its currency customers. The FANS Requirement allegedly contained protected information about AutoDealing and its structure. More importantly, Morgan issued it to other software development companies, who helped

---

1. The factual allegations in a complaint must be treated as true for the purposes of a 12(b)(6) motion. *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, ——, 2 L.Ed.2d 80 (1957). Therefore, the facts recited herein are derived exclusively from the amended complaint.

Morgan develop a computer program that copies AutoDealing.

■ In all suits for copyright infringement, the plaintiff must establish its ownership of a valid copyright work and that the defendant copied the copyrighted work. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977). The plaintiff may prove defendant's copying either by direct evidence or by showing (1) that the defendant had access to the plaintiff's copyrighted work and (2) that the defendant's work is substantially similar to the plaintiff's copyrighted material. *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Thus, Cognotec must fully allege these elements in order to state a claim for copyright infringement.

■ A computer program is "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about certain results." 17 U.S.C. § 101. The literal elements of a computer program, *i.e.,* the source code and the object code, are without question protected by copyright law.[2] *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 702 (2d Cir.1992). To a varying degree, copyright law also protects certain parts of a computer program's non-literal components.[3] *Id. See also Lotus Development Corp. Paperback Software Int'l,* 740 F.Supp. 37, 45 (D.Mass.1990) ("[F]lowcharts, if sufficiently detailed and original, are entitled to copyright protection."). The question as to which non-literal components are protected is fact specific, and each case is treated on an *ad hoc* basis. *Altai,* 982 F.2d at 704. *See also Lotus,* 740 F.Supp. at 45–46.

■ Certain non-literal components of a computer program are, however, not protected. For instance, the ideas and functions embodied in a computer program are not within the scope of copyright law. *See* 17 U.S.C. § 102(b). Only *expressions* of ideas within a computer program are protected. *Altai,* 982 F.2d at 704. In addition, "elements of a computer program that are necessarily incidental to its function are similarly unprotectable." *Id.* at 705. In other words, when there is only a limited number of ways to express a given idea, then those limited expressions are not protected. *Id.* at 708. The copyright laws also do not protect a program's instructions where external factors exist, such as market or industry demands, to limit the choice of the programmer. *Id.* For instance, if a particular industry demands that all computer programs display certain specific words on the computer screen, the components of that program that provide such a function are not protected by copyright laws.

■ *Altai* "recommends" that a district court undertake a three-step procedure in order to determine whether the non-literal components of two or more programs are substantially similar. *Id.* at 706. The first step is to dissect the structure of allegedly copied program and isolate each level of abstraction within it. This step allows the court to map and retrace the programmer's steps in reverse. *Id.* at 707. The second step "entails examining the structural components at each level of abstraction to determine whether their particular inclusion at that level was 'idea' or was dictated by considerations of efficiency, so as to be necessarily incidental to that idea; required by factors external to the program itself; or taken from the public domain and hence is nonprotectible expression." *Id.* This step allows the court to sift out the aspects of the pro-

---

2. The source code is the actual written code that a programmer inputs using any one of several languages, such as COBAL or BASIC. The object code is the binary language comprised of zeros and ones through which the computer directly receives the instructions as programmed through the source code. *See Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1229 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987).

3. The non-literal components of a computer program entail the various steps a programmer employs prior to actually writing the instructions or source code. They include flow charts, intermodual or sub-routine relationships, parameter lists and macros. *See* Steven R. Englund, *Idea, Process, or Protected Expression?: Determining the Scope of Copyright Protection of the Structure of Computer Programs,* 88 Mich.L.Rev. 866, 870–72 (1990).

**50**

gram that are ideas as well as those that possess other non-protected traits. The final step involves comparing the computer programs to determine whether the defendant copied any aspect of the protected expression of the non-literal components, and if so, whether this copying is sufficient to sustain a finding of substantial similarity. *Id.* at 710.

■ Applying these principles to the copyright claim here, it is clear that this complaint sufficiently states a claim upon which relief can be granted. Morgan contends that the copyright claim is defective because: (1) Cognotec has failed to specifically allege the original work that is the subject of the copyright claim; (2) Cognotec has failed to allege that Morgan ever had access to AutoDealing's source code; and (3) the alleged copying by Morgan is of a sort that is either not covered by Cognotec's registration or not protected by copyright laws.

Morgan's first contention is clearly incorrect. The amended complaint alleges that the original work that Morgan is infringing is Cognotec's AutoDealing computer program. (*See* Am.Compl. ¶¶ 6–10, 48). While the amended complaint is not artfully pleaded in many respects, it does make clear that the AutoDealing program is the subject of the copyright infringement.

■ Morgan accurately states that Cognotec has not alleged that it specifically had access to its source code. This omission, however, does not render the copyright claim defective. As noted, the source code is a literal component of a computer program and is protected by copyright law. Non-literal components, however, may also be protected. Thus, the failure to allege access to the source code does not make the pleading defective where the pleading alleges infringement of non-literal components. *See Altai,* 982 F.2d at 702. Reading the amended complaint liberally, Fed.R.Civ.P. 8(a), (f), Cognotec alleges that protected non-literal components of AutoDealing have been copied. (*See* Am.Compl. ¶¶ 16, 19, 20, 28, 46, and 48). Thus, the fact that Cognotec has not alleged that Morgan had access to AutoDealing's source code does not render the copyright claim defective. It only focuses the claim on the non-literal aspects of the program.

■ Finally, Morgan argues that the copyright claim fails because the non-literal components that Cognotec alleges were infringed: (1) are not covered by the copyright registration; (2) involve ideas or functions embodied in the program; and/or (3) involve matters that are limited by the demands of the foreign currency industry. As such, Morgan contends that the copyright laws do not protect these non-literal components of AutoDealing.

While it is true that the copyright registration only covers the program itself and not documents that describe the program, these documents may be detailed and original enough to involve protected non-literal components of the program. *See Lotus,* 740 F.Supp. at 45. In addition, the three step procedure that *Altai* recommends that district courts apply is necessarily fact determinative and requires detailed comparisons of computer programs. *Altai,* 982 F.2d at 704, 707–10. To adequately consider Morgan's arguments would require a thorough and detailed factual exploration of AutoDealing, the various documents issued to and by Morgan, the foreign currency industry, as well as Morgan's own program. A motion to dismiss is not the proper procedural mechanism to make this factual inquiry. *See Whitbread (US) Holdings v. Baron Philippe de Rothschild, S.A.,* 630 F.Supp. 972, 978 (S.D.N.Y. 1986). Accordingly, the copyright claim does not fail to state a claim upon which relief can be granted.

### (2) *The Lanham Act Claim*

■ Cognotec alleges that Morgan is liable under § 43(a) of the Lanham Act for misrepresenting to third parties that it owns AutoDealing. 15 U.S.C. § 1125(a). (Am Compl. ¶ 67). By its terms, § 43(a) requires that a plaintiff establish that a defendant made a misrepresentation or false designation as to a product in commerce and that this misrepresentation will likely cause confusion as to the origin or source of the product. 15 U.S.C. § 1125(a). *See Twentieth Century Wear, Inc. v. Sanmark–Stardust Inc.,* 747 F.2d 81, 91 (2d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818

(1985); *Wojnarowicz v. American Family Assoc.*, 745 F.Supp. 130, 141 (S.D.N.Y.1990). The underlying purpose of § 1125(a) is to protect consumers from a wide variety of misrepresentations of products and services, implicating "a broad spectrum of marks, symbols, design elements and characters." *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir.1981).

In this case, Cognotec has failed to allege essential elements of a § 43(a) claim. In particular, Cognotec has failed to allege that any of the infringing materials were disseminated "in commerce." Indeed, the amended complaint makes clear that Morgan developed a program to use internally for its currency customers. (*See* Am.Compl. ¶¶ 40, 44–46). In other words, Morgan's program is not disseminated "in commerce" as is required by a § 43(a) claim. *See Licata & Co. v. Goldberg*, 812 F.Supp. 403, 409 (S.D.N.Y. 1993). While Morgan's alleged conduct may violate other laws, it does not violate § 43(a) of the Lanham Act. Therefore, the Lanham Act claim fails to state a claim upon which relief can be granted.

▉▉ In addition, Cognotec fails to allege a misrepresentation or false designation. It simply claims that Morgan's copyright infringement amounts to a false designation as to the source of the computer program. (*See* Am.Compl. ¶ 55). Copyright infringement, by itself, does not amount to a misrepresentation or false designation to establish a claim under § 43(a). *Kregos v. Associated Press*, 937 F.2d 700, 711 (2d Cir.1991). In other words, there must exist some affirmative act whereby Morgan falsely represented itself as the owner of AutoDealing.[4] The

amended complaint fails to allege any such misrepresentation; consequently, it fails to state a claim upon which relief can be granted. *Id.*

### (3) *The Quantum Meruit Claim*

▉▉ Cognotec alleges that it provided Morgan "with hundreds of man hours in good faith anticipation of an executed agreement, based upon months of negotiations which were eventually agreed to in principle." (Am Compl. ¶ 85). Morgan contends that this claim should be dismissed because the amended complaint states that an express compensation agreement existed. Under New York law, "[w]here an express contract exists between the parties, recovery under a *quantum meruit* theory is precluded." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 124 A.D.2d 534, 507 N.Y.S.2d 679, 681 (2d Dep't), *aff'd*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987).

While Morgan's recitation of the law is correct, its reading of the *quantum meruit* claim is not. The amended complaint alleges that Cognotec provided these services in anticipation that a contract agreed to in principle would be executed. Thus, Cognotec does not allege that a fully executed agreement existed. It simply alleges that the terms of such an agreement were agreed to, but the execution of the agreement never occurred. (*See* Am.Compl. ¶¶ 37, 43, 85). Thus, the agreement was never completed and did not exist. Accordingly, the *quantum meruit* claim does not fail to state a claim upon which relief can be granted.[5]

---

4. In its opposition papers, Cognotec claims that in the August 26, 1993 issue of "Corporate Treasury Grapevine," a banking industry newsletter, Morgan announced that it would introduce a foreign exchange program to the international banking community in the Fall of 1993. This claim is not asserted in the amended complaint and therefore will not be considered as part of this motion. *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989). Perplexingly, Cognotec also raises the claim of trade secret theft in its opposition papers. The amended complaint does not even remotely set forth the essential elements of a trade secret claim, and Cognotec's attempt to recharacterize its Lanham Act claim as one of theft of trade secrets is totally improper.

5. Morgan also moves to dismiss the state law claims for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. This application is premised on the assumption that both the copyright and Lanham Act claims would be dismissed. Because the copyright claim has not been dismissed, this Court continues to retain jurisdiction over the pendent state law claims. *See Uniformed Firefighters Ass'n v. City of New York*, 676 F.2d 20, 23 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).

**52**

(4) *Motion to Strike*

■■■■ Morgan also moves to strike the requests for: (1) statutory damages and attorneys fees in the copyright claim, and (2) punitive damages in the breach of the confidentiality agreement claim. Cognotec alleges that Morgan infringed its copyright by issuing the FANS Requirement in November 1992. The Certificate of Registration, annexed as Exhibit A to the amended complaint, establishes that the effective date of the registration was May 10, 1993. Any awards of statutory damages or of attorneys fees are precluded when the infringement occurs prior to the effective date of registration. 17 U.S.C. § 412(1). *See Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.,* 764 F.2d 69, 73 n. 4 (2d Cir.1985). Thus, it is clear that Cognotec's requests for statutory damages and attorneys fees in its copyright claim must be stricken.

■■■■ Cognotec's Third Cause of Action alleges a "breach of the confidentiality agreement freely executed by the parties." (Am. Compl. ¶ 76). It is black-letter law that punitive damages are not available for a breach of contract claim. *See Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 793 (2d Cir.1986); *Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 62–63 (2d Cir.1985). Accordingly, Cognotec's request for punitive damages under the breach of the confidentiality agreement is also stricken.

## CONCLUSION

For the forgoing reasons, Morgan's motion to dismiss is granted only as to the Lanham Act claim but denied as to all the other claims. In addition, Morgan's motion to strike is granted in its entirety.

SO ORDERED.