**ENGINEERING DYNAMICS,
INC., Plaintiff–Appellant
Cross–Appellee,**

v.

**STRUCTURAL SOFTWARE, INC., and S.
Rao Guntur, Defendants–Appellees
Cross–Appellants.**

**No. 92–3444.**

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1995.

Thomas L. Cantrell, Roger L. Maxwell and H. Dale Langley, Jr., Jenkens & Gilchrist, Dallas, TX, for appellant.

Lawrence A. Waks, Sutherland, Asbill & Brennan, Austin, TX, for amici-Software Entre & Software Ind.

Eugene Preaus, Preaus, Roddy & Krebs, Denya Guntur, Al Harrison, Houston, TX, for amicus-Advanced & BMC.

Peter M.C. Choy, Am. Committee for Interoperable Systems, Mountain View, CA, for amicus-ACIS.

N. Elton Dry, Houston, TX, for amicus Mid–Cities PC User's Group.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
EN BANC

(Opinion July 13, 1994, (5th
Cir.1994) 26 F.3d 1335)

Before JOHNSON, JOLLY and JONES,
Circuit Judges.

EDITH H. JONES, Circuit Judge:

No active member of the court having requested a poll of the court, the panel rejects the suggestion for rehearing *en banc*. Nevertheless, we issue this supplement to the panel opinion to avoid any confusion as to its scope.

■ 1. The petition for rehearing and amicus petitions in support of rehearing suggest that our initial opinion held that EDI's user formats are not only protectable but protected by copyright law because there "are numerous ways the input formats could be organized." This is an overly simplistic view of the opinion. The panel adheres to its adoption of the abstraction-filtration-comparison test and to its application of the test on the facts before us. *See e.g., Computer Assoc's Int'l Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir.1992). One of those facts, among many, was that EDI created input/output formats to facilitate the engineering and design of offshore structures and in this context, the formats were more than a "blank form." The panel did not say that in any case involving user interface the fact that the "author" has selected from among possible formats is dispositive.

■ The panel also found a minimal level of originality consistent with *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 358, 111 S.Ct. 1282, 1294, 113 L.Ed.2d 358 (1991) ("Originality requires only that ... the selections' arrangement display some minimal level of creativity.").[1] In general, copyright only protects originality of user interface *to the extent* that the selection of variable inputs from the universe of potential inputs reflects non-functional judgments. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 838 (10th Cir.1993) ("[W]here a particular expression is common to the treatment of a particular idea, process or discovery [, *i.e.* scenes a faire,] it is lacking in the originality

1. Familiarity with the universe of possibilities upon which the "author" has premised a selection of input/output formats permits assessment of their originality. *See Kregos v. Assoc'd Press*, 937 F.2d 700, 704–05 (2d Cir.1991). *Kregos* which reversed a trial court's holding as a matter of law that a chart of nine items of information concerning a baseball pitcher's performance was not selective enough to be "original," revealed the particular importance of the facts in locating a creative contribution:

In *Eckes* [*v. Card Prices Update*, 736 F.2d 859 (2nd Cir.1984)] we upheld a District Court's finding, made after trial, that a selection of 5,000 out of 18,000 baseball cards to be considered "premium" was entitled to a copyright. In *FII* [*Financial Information Inc. v. Moody's Investors Service, Inc.*, 808 F.2d 204 (2nd Cir. 1986)] we upheld a District Court's finding, also made after trial, that the listing of five items of information concerning municipal bonds calls lacked sufficient selection to warrant a copyright; in almost all instances, the five items for the various bond issues had all appeared in 'tombstone' adds, and only 'minor additional research' was needed to complete the listings.

Kregos' pitching form presents a compilation of facts that falls between the extremes illustrated by *Eckes* and *FFI* [sic]. Kregos has selected nine items of information concerning a pitcher's performance. The universe of known facts available only from inspection of box scores of prior games is considerably greater than nine, though perhaps not as great as the quantity of 18,000 cards in *Eckes*. ... [T]here are at least scores of available statistics about pitching performance available to be calculated from underlying data and therefore thousands of combinations of data that a selector can choose to include in a pitching form. [Indeed,] [i]f the universe of available data included even 20 items and a selector was limited to 9 items, there would be 167,960 combinations of items available.

Whether in selecting his combination of nine items he has displayed the requisite degree of creativity is a ... close[ ] question. Plainly he has done better than the compiler in *FFI* [sic] who "selected" only the five facts about bond calls already grouped together in nearly all tombstone adds.... The validity of his copyright in a compilation of facts cannot be rejected as a matter of law for lack of the requisite originality and creativity.

*Id.* at 704–05 (citations omitted) (footnote relocated).

that is the *sine qua non* for copyright protection.") (citing *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289). Consequently, as our opinion explains, the district court will inquire on remand whether EDI exercised any judgment in formulating the input cards or merely reflected the industry standards and laws of engineering.

■ 2. This opinion cannot properly be read to extend to the manufacturing of computer hardware so as to deter achieving compatibility with other models or to the practice employed by users of programs of analyzing application programs to "read" the file formats of other programs.[2]

■ 3. Finally, although the panel opinion identifies the benchmark for "substantial similarity" as the compilation *en masse,* the following language is subject to some ambiguity:

> [After] determin[ing] whether variations in the registered and copyrightable format cards adopted by StruCAD render the cards noninfringing elements of the larger work at the individual card level. Then the court may determine whether the subset of StruCAD cards that are individually substantially similar to their counterparts in SACS, are, taken together, so substantially similar to EDI's copyrighted work or a part thereof as to constitute infringement.

26 F.3d 1335 (emphasis added). To avoid any mistaken impression, the underlined words should be deleted and the following sentence added:

> Of course SSI may not replicate component parts of EDI's protected work with impunity; substantial similarity may be measured by comparing the products as a whole, but the more exact a duplication of constituent pieces of a work the less over-

all similarity that may be required. *See Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548 [105 S.Ct. 2218, 2224, 85 L.Ed.2d 588] (1985) (300 words copied from plaintiff's 450–page book constituted infringement).

In all other respects, the motions for panel rehearing are *DENIED.*

---

**2.** For instance, *Gates Rubber* defined *scenes à faire* doctrines to incorporate the exclusion of protection for aspects of a work serving functional purposes. *Id.* at 838 ("The *scenes à faire* doctrine also excludes from protection those elements of a program that have been dictated by external factors. *See Plains Cotton Co-op Ass'n v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256 (5th Cir.1987). In the area of computer programs these external factors may include: hardware standards and mechanical specifications,

*see Manufacturers Technologies, Inc. v. Cams, Inc.,* 706 F.Supp. 984, 995 (D.Conn.1989), software standards and compatibility requirements, *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1525–27 (9th Cir.1992), computer manufacturer design standards, target industry practices and demands, *see Plains Cotton,* 807 F.2d at 1262, and computer industry programming practices, *see Apple Computer [Inc. v. Microsoft Corporation],* 799 F.Supp. [1006] at 1033 [(N.D.Cal. 1992)].")