**Lonnie BUTLER, Jr., Appellant,**

v.

**CONTINENTAL AIRLINES, INC., Appellee.**

**Nos. 01–00–00396–CV, 01–98–00662–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 17, 2000.

Rehearing Overruled Oct. 20, 2000.

---

five million access lines in the state, and for rate-group reclassification. *See* PURA §§ 58.056, .057, .058.

Edward M. Carstarphen, Stephen W. Lemmon, Thomas J. Brandt, Houston, Elaine A.G. Carlson, The Woodlands, for Appellant.

J. Clark Martin, Marie R. Yeates, Adam Schiffer, Carol Elizabeth Jendrzey, Houston, for Appellee.

Panel consists of Justices ANDELL, TAFT and DUGGAN.*

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. "Dumb terminals" are keyboard/video display units that transmit information to the central computer, which processes the data. Data from the central computer, as well as

## OPINION

ERIC ANDELL, Justice.

While an employee of Continental Airlines, Inc. (Continental), Lonnie Butler, Jr. wrote several macro computer programs. Butler later sued Continental, alleging it had adopted and copied his macros, ultimately using them in its new reservation system without compensating him. We are asked to determine if the trial court erred in its rendition of summary judgment in favor of Continental on Butler's claims of fraud, conversion, breach of fiduciary duty, breach of contract, an accounting, unjust enrichment, constructive trust, misappropriation of trade secrets, estoppel/quasi-estoppel, and quantum meruit. We are also asked to determine if the trial court abused its discretion when it entered a "death penalty" sanction order dismissing Butler's cause of action for breach of contract. We affirm the trial court's rendition of summary judgment on Butler's claim for fraud. We dismiss Butler's remaining claims for lack of subject matter jurisdiction. We overrule all points of error on appeal.

### Factual Background

Butler worked for Continental from 1990 to 1995 as a reservation agent. During that time, Continental reservation agents made passenger reservations on a host computer system called SONIC, which they accessed through Telex keyboards attached to "dumb terminals." [1] These terminals lacked Personal Computer (PC) capability, but had Programmable Function (PF) keys, which could execute a type of computer program called a "macro." [2] While the parties disagree on many factual details, they agree Butler wrote several of these macro programs.

the response from the central computer, may be viewed by the agent.

2. Generally, a macro is a computer program which is initiated by pressing a designated key, which causes the computer to execute a series of defined functions in a desired sequence.

The purpose of these macros is to reduce the number of keystrokes necessary to create a passenger reservation, thus shortening response time and increasing agent productivity. Butler created a macro program for each PF key, and a keyboard template showing the function of each PF key, and named it Advanced Agent Productivity, or AAP. In 1993, Butler disclosed to Continental the macros he had written. Butler spoke to Vice President George Moore, Senior Director of Reservations, in October of 1993, and later wrote a letter to Ed McChrystal, Continental's Staff Vice President for Reservations. He also contacted Robert Ferguson, C.E.O. of Continental. According to Butler, this disclosure was done in confidence for the limited purpose of testing and evaluation, pursuant to the provisions of the written "Assignment of Inventions Agreement" Butler had with Continental as an employee. In his deposition testimony, however, Butler admits he never told anyone at Continental he was revealing AAP to them in confidence. With Butler's help, Continental tested the macros.

The parties disagree on the results of the testing and the extent to which the macros were used by Continental employees then, and possibly even today. When Continental suggested further testing was needed, Butler told Moore that he did not want further testing to be done, but that he just wanted the macros available for reservation agents' use. In a letter to Moore in 1994, Butler stated he had accomplished what he set out to do—to offer Continental an alternative to the expense of purchasing a new computerized reservation system.

Shortly thereafter, Continental purchased a new computerized reservation system called "Qik–Res." The Qik–Res system used terminals with PC capability instead of dumb terminals. Butler claims Continental incorporated his macros into the configuration during the transition phase from the SONIC system to Qik Res to use as a fall back until the reservation agents learned the new system.

## Procedural Background

The procedural history in this case includes motions for summary judgment and partial summary judgment by both parties. Butler filed a motion for partial summary judgment on liability. Continental countered with a response and cross-motion for summary judgment. On May 9, 1997, the trial court entered an order granting Continental's cross-motion for summary judgment, but it vacated the ruling on June 5, 1997. The trial court gave Continental 10 days to file a second motion for summary judgment addressing new claims raised by Butler in his second amended petition.[3] Continental filed a second motion for summary judgment, which was granted on Butler's claims for fraud, conversion, breach of fiduciary duty, unjust enrichment, misappropriation of trade secrets, constructive trust, estoppel/quasi estoppel, and quantum meruit causes of action. Butler's only remaining cause of action was for breach of contract.[4] Continental filed a motion for sanctions that the trial court denied by written order on April 22, 1998. Nevertheless, on April 23, 1998, the trial court signed an "Order Granting Continental's Motion for Sanctions and Dismissing Plaintiff's Cause of Action With Prejudice." The trial court struck all reference to sanctions from the text of the order. In a judgment nunc pro tunc dated September 24, 1998, the trial court ordered that the April 23, 1998 order be replaced with a corrected and amended title, "Order Granting Continental's Second Motion for Summary Judgment as to Plaintiff's Contract Claim and Dismissing Plaintiff's Con-

---

3. The three new causes of action listed were (1) estoppel/quasi-estoppel, (2) quantum meruit, and (3) an accounting. Butler eventually filed a Third Amended Petition.

4. Butler's claim for an accounting also remained. The parties have both stipulated that Butler's claim for an accounting is a remedy and not a cause of action.

tract Claim with Prejudice." Butler appeals the trial court's actions.

## Death Penalty Sanction

In point of error one, Butler argues the trial court erred in dismissing his claim for breach of contract as a death penalty sanction, without notice or a hearing. On April 22, 1998, the trial court signed an order denying Continental's motion for sanctions. The next day, the trial court signed an order entitled: "Order Granting Continental's Motion for Sanctions and Dismissing Plaintiff's Cause of Action with Prejudice." The entire text of the order concerning sanctions was crossed out by the trial court, with the following text remaining: [5]

> Be it remembered that there came on for consideration by the Court the Motion of Continental Airlines, Inc. for an Order dismissing Plaintiff's remaining claim for breach of contract with prejudice.... The Court, having *re* considered Continental's Motion, the pleadings, and the law, concludes that Continental's Motion should be granted. Accordingly, IT IS ORDERED that Plaintiff's *remaining* cause of action, *(breach of contract)* against Continental be and it is hereby dismissed with prejudice.

A judgment nunc pro tunc was later entered by the trial court in response to Continental's motion to correct judgment nunc pro tunc. The judgment nunc pro tunc states that the judgment rendered on April 23, 1998 granted Continental's summary judgment motion on Butler's remaining cause of action (for breach of contract,) and did not grant Continental's motion for sanctions.

 Once the trial court has lost its jurisdiction over a judgment, it can only correct clerical errors in the judgment entered by using a judgment nunc pro tunc. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986). The trial court can only correct a final written judgment that incor-

rectly states the judgment actually rendered. *Id.* at 231–32. A clerical error is a mistake or omission in the entry of a judgment in the official record and the judgment as it was actually rendered. *Universal Underwriters Ins. Co. v. Ferguson*, 471 S.W.2d 28, 29–30 (Tex.1971). A judicial error, however, is an error arising from a mistake of law or fact that requires judicial reasoning or determination to correct. *West Texas State Bank v. Gen. Resources Management Corp.*, 723 S.W.2d 304, 306 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Whether an error in a judgment is judicial or clerical is a question of law after the trial court makes factual findings that it previously rendered judgment and the judgment's contents. *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex.1968); *Escobar*, 711 S.W.2d at 232. We review those factual determinations under a no-evidence and factually insufficient evidence standard of review. *Escobar*, 711 S.W.2d at 232.

 In the nunc pro tunc order, the trial court states that during the April 20, 1998 hearing, counsel for Continental asked the trial court to reconsider Continental's second motion for summary judgment and dismiss with prejudice Butler's breach of contract claim. The trial court's nunc pro tunc order states that its "minute entry," i.e. docket sheet, for April 23, 1998, correctly states that the trial court was reconsidering Continental's second motion for summary judgment, and the trial court had signed the order granting Continental's second motion for summary judgment. In the order signed April 23, 1998, all of the language referring to sanctions and improper conduct by Butler's counsel was crossed out by the trial court. The only reference to the motion for sanctions remained in the title of the order. The nunc pro tunc order states that the error was in not crossing out the corresponding language in the title of the order he signed.

---

5. Handwritten interlineations are underlined.

We conclude this was a clerical error on the part of the trial court and did not result from judicial reasoning or determination. *Burgess v. Burgess,* 834 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1992, no writ). There is evidence in the record supporting the finding of the trial court that the judgment actually rendered by the trial court on April 23, 1998 granted Continental's second motion for summary judgment. The trial court did not dismiss Butler's claim for breach of contract as a death penalty sanction. Accordingly, we overrule point of error one.

### Summary Judgment

Butler argues the trial court erred in its rendition of summary judgment for Continental.

### 1. Standard of Review

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). When a trial court's order rendering summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

Once the defendant produces evidence that entitles it to summary judgment, the plaintiff must present evidence that raises a fact issue. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). In reviewing the defendant's summary judgment proof, every reasonable inference must be indulged in favor of the plaintiff, and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### 2. Applicability of Federal Copyright Act

In point of error three, Butler asserts summary judgment was improper because

Continental did not establish, as a matter of law, that it owns a copyright in Butler's computer programs. Continental argues it owns the rights of copyright in the computer macros under the Copyright Act, and that this disposes of all of Butler's claims in this lawsuit because of the Copyright Act's preemption provision. Further, Continental argues the trial court and this Court lack subject matter jurisdiction over these preempted claims arising under the Copyright Act because of a statute giving federal courts exclusive jurisdiction over cases relating to copyright.

■ Butler argues that his claim does not fall within the Copyright Act. He contends his suit is based on Continental's use of his computer macros without his permission and without compensating him. Butler argues that his valuable contribution to Continental was his "idea" to write the macros, which he termed as a "moment of clarity" in oral argument before this Court. We are not convinced by these semantics. Butler's suit is based on the computer macros he wrote, which he claims Continental copied onto multiple dumb terminals for use by its reservation agents, ultimately incorporating the macros into its new Qik–Res reservation system. Butler's claim is that Continental copied and misappropriated the computer macros he authored. For the reasons discussed below, we conclude computer macros are the subject matter of the federal Copyright Act. Therefore, regardless of how the language in Butler's petition is couched, several of Butler's state law claims are preempted by the federal Copyright Act. Because the federal courts have exclusive jurisdiction over such claims, neither the trial court, nor this Court, has subject matter jurisdiction over those claims.

"The [federal] courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights

and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(a) (1994). The Copyright Act preempts state rights that cover works falling within the Act's subject matter, and protects rights which are equivalent to the exclusive rights within the scope of the Act. 17 U.S.C. § 301(a) (1994).

First, we must address whether Butler's macros are within the subject matter of the Copyright Act.

## What Components of a Computer Program are Copyrightable?

 The Copyright Act was amended in 1976 to include computer programs as protectable literary works. *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 259 (5th Cir.1988). The Copyright Act defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101 (1994 & Supp. IV 1998). A computer program may be divided into literal and non-literal components. *See Cognotec Servs. Ltd. v. Morgan Guar. Trust Co. of New York*, 862 F.Supp. 45, 49 (S.D.N.Y. 1994). The literal elements of a computer program include the source and object codes which are unquestionably covered by copyright law.[6] *Id.* A general consensus has emerged that the non-literal elements of a computer program may also be protected by copyright law.[7] *Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 536 & n. 20 (5th Cir.1994) (embracing the general noncontroversial proposition that non-literal aspects of copyrighted works, like their structure, sequence, and

organization may be protected under copyright law). This proposition has been approved by United States Supreme Court precedent. *See, e.g., Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 111 S.Ct. 1282, 1289, 113 L.Ed.2d 358 (1991) (suggesting that the selection and arrangement or the organization of facts may by protected by copyright law). For example, if a flowchart is sufficiently detailed and original, it is entitled to copyright protection. *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F.Supp. 37, 45 (D.Mass.1990). The question as to which non-literal elements are protected by copyright law is fact specific, and each case is treated on an ad hoc basis. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 704 (2nd Cir.1992); *Cognotec*, 862 F.Supp. at 49.

## Continental's Computer Reservation System and Butler's Macros

Continental's reservation agents, including Butler, used dumb terminals connected to large mainframe or central computers to make airline reservations. The database and the computer programs ran on the mainframe computer and the dumb terminals could transmit information and receive a response from the central computer. Only the central computer had the capability to process data. From the dumb terminal, the agent could read various flight and reservation information and could type in data from a customer and send that data to the central computer. Each dumb terminal had a row of PF keys across the top, which were designed to be used to write and activate macros.

---

**6.** The source code is the actual written code input by the programmer using a computer language such as BASIC or COBOL. The object code is the binary language comprised of zeros and ones through which the computer receives the instructions as programmed through the source code. *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1230–31 (3rd Cir.1986).

**7.** Non-literal components of a computer program involve the various steps a programmer employs prior to actually writing the instructions or source code. These elements include flow charts, inter-modual or sub-routine relationships, parameter lists and macros. *Cognotec*, 862 F.Supp. at 49 (citing Steven R. Englund, *Idea, Process, or Protected Expression?: Determining the Scope of Copyright Protection of the Structure of Computer Programs*, 88 Mich. L. Rev. 866, 870–72 (1990)).

Butler wrote 12 of these macros, one for each PF key, and made a keyboard template showing the location and function of each key. The macros were input in a single dumb terminal or a string of dumb terminals. Butler did not have access to the source code on the central computer. Butler claims his system is slightly different from a pure macro in that it allowed user interfaceability by letting the user fill in a form or make choices after activating a keystroke. Butler's macros effectively programmed the existing computer program (the source code contained in the central computer) to perform certain functions at each dumb terminal into which his macro programs were input. Butler's macros made a form appear on the screen at the dumb terminal for the reservation agents to fill in. The question of copyright still goes to the underlying program, and not to the forms that appear on the screen. Butler's programs strung together single instructions and programmed the PF key to perform according to those instructions.

Although Butler argues *against* the copyrightability of his macro computer programs on appeal to this court, the record shows in 1995 he applied for the copyright for the code that he wrote. His deposition testimony reveals that his application for the copyright included four pages of code. The record is silent about any response Butler received from the Copyright Office.

Macros are simple computer programs. They program based on the existing computer program. Using instructions provided by Continental to its employees, Butler input his macro into the dumb terminals. This is a tangible expression of the program and is copyrightable. We conclude the macros Butler wrote are protected by copyright as non-literal components of a computer program.

■ Whether or not Butler actually received a copyright in the code, we conclude the macro computer programs he wrote constitute "literary works" within the meaning of the Copyright Act. 17 U.S.C. § 101; *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 & n. 5 (5th Cir.1994), opinion supplemented on denial of rehearing by 46 F.3d 408 (5th Cir.1995); *Vault Corp.*, 847 F.2d at 259 & n. 5 (quoting a House Report stating that the term "literary works" includes computer programs).

## Resulting Preemption of State Law Claims

Section 301 of the Copyright Act provides:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this Title ... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any States.

17 U.S.C. § 301(a) (1994).

■ The Fifth Circuit Court of Appeals has established a two-part test to determine if a state law claim is preempted: (1) whether the claim falls within the subject matter of copyright; and (2) whether the claim protects rights equivalent to any of the exclusive rights of a federal copyright. *Daboub v. Gibbons*, 42 F.3d 285, 288–89 (5th Cir.1995). Computer programs fall within the subject matter of copyright. *Eng'g Dynamics*, 26 F.3d at 1341. A state law claim is equivalent to a copyright claim where the core of the state law theory of recovery goes to wrongful copying. *Daboub*, 42 F.3d at 289–90. This inquiry requires a comparison of the nature of the rights protected under the Copyright Act with the nature of the state law rights being asserted. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir.1999). A state law cause of action is equivalent to the rights grant-

ed by the Copyright Act if "the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir.1990). In other words, a state law claim is equivalent to federal copyright law rights if the elements of the state law cause of action would not establish qualitatively different conduct by the defendant than the elements for an action under the Copyright Act. *Alcatel,* 166 F.3d at 787; *Daboub,* 42 F.3d at 290. "Federal courts have repeatedly recognized that allowing state claims where the core of the complaint centers on wrongful copying would render the preemption provisions of the Copyright Act useless." *State v. Perry,* 83 Ohio St.3d 41, 697 N.E.2d 624, 627 (1998); *see United States ex-rel. Berge v. Board of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1464 (4th Cir.1997); *see also Daboub,* 42 F.3d at 290 & n. 8.

▆▆▆ Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work.[8] 17 U.S.C. § 106 (1994 & Supp. IV 1998). The core of Butler's state law claims for conversion and misappropriation of trade secrets, without detailing the specific elements of each claim, is the same: the wrongful copying, distribution, and performance of Butler's macro computer programs. *Daboub,* 42 F.3d at 289–90 (preempting state law claims for conversion and misappropriation of trade secrets); *see also Data Gen. Corp. v. Grumman Sys. Support Corp.,* 795 F.Supp. 501, 505 (D.Mass.1992), aff'd, 36 F.3d 1147 (1st Cir.1994) (conversion claim was preempt-

ed); *Aldridge v. The Gap, Inc.,* 866 F.Supp. 312, 314 (N.D.Tex.1994) (misappropriation claim is preempted by the Copyright Act); *Gemcraft Homes, Inc. v. Sumurdy,* 688 F.Supp. 289, 295 (E.D.Tex. 1988) (claims for conversion and tortious interference with contract are preempted). Similarly, Butler's claim that Continental was unjustly enriched by his macro computer programs is derived from Continental's copying of the macros for use on other dumb terminals, and therefore, is preempted by the federal law. *Tavormina v. Evening Star Prods., Inc.,* 10 F.Supp.2d 729, 734 (S.D.Tex.1998).

It follows that Congress intended that actions preempted by section 301 of the Copyright Act be regarded as arising under federal law relating to copyrights. *Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225, 232 (4th Cir.1993). Congress has clearly indicated that state law claims, based on common law or statute, which are within the subject matter of copyright law and which protect rights equivalent to those which are exclusively within the scope of federal copyright law, should be litigated only as federal copyright claims. *Id.* Butler's claims that Continental converted and misappropriated and was unjustly enriched by copying his computer macros are such claims and should be litigated as federal claims.

Further, 28 U.S.C. section 1338(a) provides that the jurisdiction of the federal courts in cases relating to copyright is *exclusive.* This is strong evidence that Congress intended litigation involving

---

**8.** Section 106 provides that:

Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and
(5) in the case of literary, musical, dramatic and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly. 17 U.S.C. § 106(1)(2)(3) (1994) & § 106(4)(5) (1994 & Supp. IV 1998).

copyrights to take place in federal courts. *Id.*

Because Butler's claims for misappropriation of trade secrets, conversion and unjust enrichment are preempted by the Copyright Act, we conclude neither the trial court nor this Court has subject matter jurisdiction over these claims. Accordingly, we dismiss Butler's claims for misappropriation of trade secrets, conversion, and unjust enrichment.

**Butler's other claims covered by the Copyright Act**

 The federal courts have been granted exclusive jurisdiction over cases arising under the Copyright Act. 28 U.S.C. § 1338(a). Having concluded that Butler's claims, preempted by the Copyright Act, are claims "arising under" the Copyright Act, we must next ask if Butler's remaining claims also arise under the Copyright Act. All the circuit courts considering the question of whether a suit arises under the Copyright Act for the purposes of section 1338(a), including the Fifth Circuit Court of Appeals, have adopted the following criteria for determining if a claim arises under the Copyright Act, thus invoking the exclusive jurisdiction of the federal courts.[9] A claim arises under the Copyright Act if: (1) the complaint is for a remedy expressly granted by the Act; (2) it asserts a claim requiring construction of the Act; or (3) it presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987) (adopting criteria from *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964)). Having thoroughly examined Butler's remaining claims, we conclude that the resolution of the underlying issues in those claims depends upon construction of the Copyright Act. The construction of the work for hire provision of the Copyright Act will determine whether Continental has copied and used copyrightable material belonging to Butler or itself. "A case

arises under federal law if rights claimed by one party may be defeated by one construction of the statute and sustained by opposite construction." *Hines v. Cenla Community Action Comm., Inc.*, 474 F.2d 1052, 1056 (5th Cir.1973). Therefore, we conclude the trial court and this Court lack subject matter jurisdiction over Butler's remaining claims.

**3. Shop Right Doctrine**

In point of error two, Butler argues the trial court erred in its rendition of summary judgment because Continental has not established as a matter of law that it has a "shop right" in the computer macros. In its motion for summary judgment, Continental argued it had a shop right to Butler's macros on the basis of two theories-implied license and estoppel and acquiescence. Because we have found as a matter of law, Butler's computer macros fall within the subject matter of the Copyright Act, we decline to address point of error two.

**4. Fraud**

**The Initial Claim**

In point of error four, Butler argues the statements in a letter from Moore to Butler raise a genuine issue of material fact and preclude the rendition of summary judgment on his cause of action for fraud.

 To prevail in a cause of action for fraud, a party must show:

(1) a material representation was made;

(2) it was false;

(3) when the speaker made it, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

(4) it was made with the intent that it should be acted on by the party;

(5) the party acted in reliance upon it; and

(6) the party thereby suffered injury.

**9.** *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 350 (2d Cir.2000) (providing citations to circuit court cases adopting the *T.B. Harms* test.)

*Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

■ Butler initially argued Continental committed fraud by knowingly and falsely representing to him the actual value of AAP to Continental and that Continental would not use AAP. Butler claims that as a result of Continental's actions, he halted all efforts to promote AAP to Continental and others. The specific statements that Butler claims were false were made in an April 15, 1994 letter from Continental Vice President George Moore to Butler. In the letter, Moore described the testing process used to test Butler's computer macros and stated "the results were inconclusive in that there were no statistically valid differences in the productivity performances of the two [testing] groups."

In response, Continental has provided the deposition testimony of Moore, Elizabeth Fuller, Continental's Regional Director of Reservations, and Bruce Cunningham, a consultant to Continental, to support its contention that the statements made in Moore's letter were an opinion expressed by Moore, and were not false because the test results were, in fact, inconclusive.[10]

■ Butler has not provided any evidence to raise a fact issue as to Continental's alleged fraud, but relies only on his own conclusory statements that the statements made by Moore were false. Conclusory statements may not be considered as summary judgment proof. *Thomas v. Collins*, 960 S.W.2d 106, 113 (Tex.App.— Houston [1st Dist.] 1997, pet. denied).

We conclude, as a matter of law, Continental has fulfilled its summary judgment burden and disproved the elements of But-

ler's fraud claim that the statements were false, and that the speaker made the representations knowing they were false, or recklessly without any knowledge of the truth.

Butler also alleged Moore's letter contained a statement falsely representing to him that Continental would not use his computer macros. A review of the letter shows Moore simply did not say what Butler contends he did.

Butler claims that the statement in Moore's letter that Continental felt there was insufficient justification to further develop Butler's proposals was a representation to him that Continental would not use his macros. What Moore simply said was there was insufficient justification to further develop Butler's proposal. Moore also stated Continental would be implementing the Qik–Res reservation system in the near future. Moore made no statements to Butler that Continental would not use the macros in the interim, pending the conversion of its reservation system to Qik–Res. We overrule point of error four.

**Butler's Additional Allegations**

In point of error five, Butler claims Continental failed to properly frame any basis for summary judgment on the new basis for his cause of action for fraud alleged in his amended petition, but merely attacked the sufficiency of his pleadings.

In an amended petition, Butler alleged Continental fraudulently represented: (1) if he disclosed inventions, it would not use them without demanding and receiving an assignment; (2) it would fairly and honestly test and evaluate AAP and fairly and honestly report the results of such tests; and (3) it would not use his inventions

---

10. In her affidavit, Fuller stated she was involved in the testing process. It was her opinion the test results were inconclusive, and it was clear to her that Moore had the same opinion. Bruce Cunningham, consultant for Continental, reviewed the test results independently, and stated in his affidavit that he agreed with Moore's conclusion that the test results were inconclusive, and he could see how Moore reached that conclusion. In his affidavit and in the letter sent to Butler, Moore stated that he thought further testing was necessary and this might provide more favorable results. Butler has not disputed Moore's statement that it was Butler who requested that no further testing be conducted on the macros.

under any circumstances without demanding and receiving an assignment of his inventive rights.

Butler argues Continental merely attacked the sufficiency of Butler's pleadings. A review of Continental's second motion for summary judgment reveals that Continental argued Butler's claim of fraud was precluded by his breach of contract claim based on the same facts.

■ Butler's computer macros are literary works and are the subject matter of federal copyright law. The computer macros were not an invention or improvement governed by the parties' Assignment of Inventions Agreement. We conclude, as a matter of law, the Assignment of Inventions Agreement cannot form the basis for a fraud cause of action by Butler.

## Conclusion

We find, as a matter of law, Butler's computer macros are copyrightable material as literary works under the Copyright Act. As such, they are the subject matter of the Copyright Act, and Butler's claims for misappropriation of trade secrets, conversion, and unjust enrichment are preempted by the Copyright Act. We further conclude Butler's remaining claims arise under the Copyright Act and fall within the exclusive jurisdiction of the federal courts. Therefore, the trial court and this Court lack subject matter jurisdiction over Butler's claims for conversion, breach of contract, breach of fiduciary duty, unjust enrichment, constructive trust, misappropriation of trade secrets, estoppel and quasi estoppel, quantum meruit, and accounting are dismissed for lack of subject matter jurisdiction. We affirm the trial court's rendition of summary judgment on Butler's various claims for fraud based on statements made by Continental to Butler. We overrule all points of error on appeal.