IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00021-CV

 

Efren Avila,

                                                                      Appellant

 v.

 

LONE STAR RADIOLOGY,
BOB KUBICKI,

DR. KENNETH LUSTIK,
FAMILY CARE

PHARMACY, DERRICK FORD,

AND KAREN POWELL,

                                                                      Appellees

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 03-00-12821-CV

 



DISSENTING OpinioN










 

          Unfortunately, I do not see any chance
of getting to the right result in this case on further review.  Who is going to
appeal?  Who can?  Where is there sufficient economic incentive to make it
right?  Maybe the representatives of the medical creditors would prefer not to
be named as appellees or judgment creditors enough that they will pursue it. 
While the dollar amount is small, the implications are enormous.  The majority
has made persons and entities parties to this appeal because they were
identified in a brief, and some did not even receive a copy of that brief.

Overview

          The original opinion issued on June
29, 2005.  No motion for rehearing was filed.  Thus, our plenary jurisdiction
ended 60 days thereafter on August 28, 2005.  Tex.
R. App. P. 19.1(a).  The mandate issued on October 21, 2005.  Any
jurisdiction we had to modify the opinion or the judgment, other than for a
purely clerical error, has long since passed.  Tex. R. App. P. 19.3.  So the operative question is whether
purporting to add some parties on appeal, long after the appeal was in
progress, and now changing the assessment of cost to those “parties” is a
purely clerical error that we can correct.  Tex.
R. App. P. 19.3(a).  I do not believe it to be a purely clerical error,
and thus, I dissent.

Background

          The majority memorandum opinion and my
dissenting opinion in this case were issued on June 29, 2005.  Avila
v. Christopher, No. 10-04-00021-CV, 2005 Tex. App. LEXIS 5038, 2005 WL 1531170
(Tex. App.—Waco June 29, 2005, no pet.).  At that time, the full style of the
case was:  Efren Avila v. Andy Christopher, Daniel Alan Christopher and B.G.
Williams d/b/a Williams Asphalt.[1] 
There was no motion for rehearing filed.  There was no petition for review
filed.  The mandate issued in the usual course of proceeding.  Tex. R. App. P. 18.1.  Then, seven days
after the mandate was issued, we received a letter from counsel for the
Christophers.  The letter copied only Avila’s attorney.  




Who Are Properly
Parties To This Appeal?

          In the letter, counsel asserted that
his clients were released by Avila and dismissed from the underlying case “well
before Avila appealed.”  The letter indicates a common misconception – that
once dismissed from a case, the party is no longer subject to the possibility
of being impacted by subsequent events that occur in the case or of being a
party to a subsequent appeal.  When a party has settled a claim and secured an
order of dismissal, until that dismissal order is final, the party is just
that, a party to the case, and must be served with all documents pursuant to
Texas Rule of Civil Procedure 21 and, if the entity remains a party on appeal,
Texas Rule of Appellate Procedure 9.5.  If the case is proceeding against other
parties, the only way to avoid continuing involvement, cost, and risk in the
case is to secure a severance so that the order dismissing the party can be
made a final judgment as to the dismissed party.

          It appears that the Christophers may also
have been operating under the mistaken belief that they were not parties to the
severed case in the trial court.  The letter seems to imply that it was only
the interpleader action that was severed.  This is, however, contrary to the
severance order.  The severance order “severs Efren Avila’s claim against Andy
Christopher and Daniel A. Christopher and the interpleader action from the rest
of the suit.”  The documents ordered to be included in the severed action
include all the pleadings and answers in which the Christophers were involved. 
There can be no question that the Christophers were parties in the severed
case.

          The next question then is whether the
Christophers were parties in the appeal.  The original notice of appeal did not
specify the “parties” against whom relief would be sought, nor did the amended
notice of appeal.  A notice of appeal invokes our jurisdiction of an appeal
over all the “parties to the trial court’s judgment or order appealed from.”  Tex. R. App. P. 25.1(b).  A notice of
appeal, however, does not invoke our jurisdiction over persons who were not
parties in the trial court.  According to the certificate of service, counsel
for the Christophers was served with both notices of appeal, the original and
amended.  The style also continued to be in their names.  Thus, based upon this
record, it appears the Christophers were intended to be and are parties to the
appeal.

          Any doubt about whether this Court
considered the Christophers as parties to this appeal should have been resolved
when the Court acknowledged receipt of the notice of appeal and notified the
attorneys of the appellate cause number and style of the appeal as follows:

          Re:     Court
of Appeals Number:  10-04-00021-CV

                   Trial
Court Case Number:  03-00-12821-CV

 

          Style:  Efren
Avila

                   v.

Andy Christopher, Daniel Alan Christopher and
B.G. Williams 

d/b/a Williams Asphalt

 

This notice was sent only to counsel for Avila and counsel for the Christophers.  No one else received this notice from the Court. 
Neither Avila nor the Christophers complained about the absence of notice being
sent to the litany of medical creditors.  Neither party complained about the
style of the appeal.  The parties and this Court proceeded with the appeal as
follows:


 Noticed
 the parties that the clerk’s record had not been filed, because it had
 apparently not been paid for.


 


 Noticed
 the parties of the deficiencies in the record.  It did not contain
 specified documents.  Included in the list of missing documents were
 plaintiff’s petition, defendants’ answers, summary judgment pleadings, and
 summary judgment.


 


 Noticed
 the parties the clerk’s record was filed.


 


 Noticed
 the parties the reporter’s record had not been filed.


 


 Noticed
 the parties, again, that the reporter’s record had not been filed.


 


 Noticed
 the parties that the reporter’s record was filed.


 


 Noticed
 the parties of the receipt of a defective brief from appellant.


 

     In the above litany, “parties”
is in reference to only Avila’s and the Christophers’ counsel receiving
notice.  None of the medical creditors received any of these notices.  As far
as this Court was concerned, they were not parties to this appeal.  

     At this juncture, it is
appropriate to note that normally the docketing statement would have provided
the necessary information to determine who Avila intended to be appellees.  A
docketing statement was never filed.  And the Court failed to follow up on its
demand sent to Avila that one be filed.  Justice Vance has characterized the
docketing statement as only having administrative purposes.  Hensley v. W.M.
Specialty Mortgage LLC, No. 10-05-00332-CV, 2005 Tex. App. LEXIS 9614 (Tex. App.—Waco Nov. 16, 2005, no pet. h.)(Vance, J., concurring note).  I disagree. 
Determining who is a party to an appeal is substantive.  We have used the
docketing statement in the past to determine who was, or was not, intended as a
party to an appeal.  Polys v. Daney, No. 10-98-00285-CV (Tex. App.—Waco Nov. 25, 1998, no pet.)(not designated for publication).  The docketing
statement provides substantive information about who the appeal is being
pursued by and against.  It can provide outcome determinative information. 
That is substantive – not administrative.

     Finally, over six months after
the amended notice of appeal was filed, when the amended brief was filed, it
appeared that maybe someone else needed to be notified of something because the
style on the brief was as follows:

Efren Avila,

Appellant,

v.

Lone Star Radiology, Accident & Injury, Open

Air MRI, Family Care Pharmacy, Parkland

Hospital, and Pedro Nosnik, M.D.,

Appellees

 

          But the certificate of service
indicates that it was served only on “representatives” of Parkland Hospital, Dr. Nosnik, and Accident & Injury.  This means Lone Star Radiology, Open Air MRI,
and Family Care Pharmacy were not served with the brief and it was not possible
to determine from the brief if the persons served were attorneys.  The list of
“Parties and Counsel” did not identify the Christophers.  See Tex. R. App. P. 38.1(a).  But other
errors in the listing of “Parties and Counsel” were readily apparent.  Dr.
Tamara Uptigrove was identified as counsel for Lone Star Radiology.  Dr.
Kenneth Lustik was identified as counsel for Open Air MRI.  No counsel
or representative was identified for Family Care Pharmacy, and Derrick Ford was
identified as counsel for Parkland Hospital.  But, in apparent response to this
listing and identification of “appellees,” the Court simply “added” the
following persons to our case management system on June 15, 2004, all as
appellees:

Derrick Ford – Pro Se

Bob Kubicki – Pro Se

Lone Star Radiology

Dr. Kenneth Lustik – Pro Se

Family Care Pharmacy – Pro Se

Karen Powell – Pro Se

Dr. Tamara Uptigrove – Pro Se

 

          The source of this information for
these “new” appellees appears to be solely from the style and the obviously defective
“identity of the Parties and Counsel” in appellant’s corrected brief.

Let the Games Begin

          So without any prior involvement in
the appeal, on June 24, 2004 we notified the “new” appellees and
representatives that their brief had been due on June 7, 2004 and neither a brief
nor a motion to extend had been filed.  I am not surprised that no brief was
filed by persons, entities, or representatives that had no idea that an appeal
was proceeding without them.  Until June 24, 2004, they had no reason to know
they were parties in a case, much less that they were appellees in an appeal.

          The clerk received a phone call.  The
phone call was followed by a letter.  The full text of the letter follows:

Dear Ms. Roessler:

 

          As we discussed following my receipt
of your June 24, 2004 letter regarding the above-referenced matter, I have no
record of this matter except for correspondence from Mr. Garcia’s office.  That
lack of documentation leads me to believe that I made no appearance at the
trial court.  Furthermore, had I made such an appearance, I would have also
made an appearance on behalf of Lone Star Radiology and Open Air MRI.

 

          In any event, as we discussed and in
light of the above, I represent to the court that Appellees Accident &
Injury, Lone Star Radiology, and Open Air MRI will not be submitting briefs in
this matter.

 

          By copy of this letter all counsel of
record are being served.

 

                                                          Very
truly yours,

 

                                                          Robert
Kubicki,

                                                          General
Counsel

 

          As an aside:  Can a person make an
appearance in an appellate court by having a representative graciously respond
to a clerk’s notice that a brief is late when there was no prior involvement in
the appeal by the person?

          The Court thereafter notified
everybody listed in our case management system, including the Christophers,
that the case would be submitted without oral argument.  An opinion, a
dissenting opinion, and judgment were issued.  Nothing was said by anyone.  No
motion for rehearing.  No petition for review.

          The mandate issued.  

          Seven days after the mandate issued, counsel
for the Christophers responded by letter that they were not parties to the
appeal and, therefore, costs should not be assessed against them in the
judgment.  The only person or entity provided a copy of the letter, other than
the Court, was Avila’s counsel.  So the medical creditors were not copied or
served with the document and thus have no idea this could be coming.  They have
not been asked to address any of these issues; nobody has.

          They should not have to because they
are not parties to this appeal.

          So under the guise of a clerical
error, we are now revising the “style” of the appeal and rendering a judgment
assessing appellate costs against persons who had no notice until the eleventh
hour that they were allegedly parties to an appeal involving their rights.  The
final judgment rendered by a majority of this Court did not assess costs
against them.  But surprise, now you are not only parties to an appeal that you
never had a legitimate way to participate in, but you lost and now you owe for
costs!  Welcome to the Tenth Court of Appeals – so glad we could be of service
to you.

One Step Back

          Before anyone accepts this as an
appropriate fix, let us all take one step back.  Is this actually a clerical
error that we can “fix” by withdrawing an opinion and judgment and recalling a
mandate?  I think not.

Clerical vs. Judicial
Errors

          Most of the cases about correcting
clerical errors arise from modification of trial court judgments.  In this
regard, the following discussion is typical.

   A clerical error is a discrepancy between the
entry of a judgment in the record and the judgment that was actually rendered. 
See Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Butler
v. Cont’l Airlines, Inc., 31 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.]
2000, pet. denied).  A clerical error does not result from judicial reasoning,
evidence or determination.  Andrews, 702 S.W.2d at 585.  Conversely, a
judicial error arises from a mistake of law or fact that requires judicial
reasoning to correct.  Butler, 31 S.W.3d at 647.  A judicial error
occurs in the rendering, rather than the entering of the judgment.  Escobar,
711 S.W.2d at 231.

 

   A
trial court can only correct nunc pro tunc the entry of a final written
judgment that incorrectly states the judgment actually rendered.  Id. at 231-32.  Even if the trial court incorrectly renders judgment, the trial
court cannot alter a written judgment that precisely reflects the incorrect
rendition.  Id. at 232.  If the trial court corrects a judicial error
after its plenary power has expired, the judgment is void.  Dikeman v. Snell,
490 S.W.2d 183, 186 (Tex. 1973).  When deciding whether an error in a judgment
is clerical or judicial, the court must look to the judgment actually rendered
and not the judgment that should have been rendered.  Escobar, 711
S.W.2d at 231.  Whether an error is judicial or clerical is a question of law. 
 Id.

 

   It is well settled that the rendition of a
judgment occurs when the trial court’s decision is officially announced either
by a signed memorandum filed with the clerk of the court or orally in open
court.  In re Fuselier, 56 S.W.3d 265, 268 (Tex. App.—Houston [1st
Dist.] 2001, orig. proceeding).  Here, neither party disputes that the trial
court’s August 2002 letter was the trial court’s rendering of judgment.

 

   In order for a judgment nunc pro tunc to be
properly granted, the evidence must be clear and convincing that a clerical
error was made.  Riner v. Briargrove Park Prop. Owners, Inc., 976 S.W.2d
680, 683 (Tex. App.—Houston [1st Dist.] 1997, no writ); see Broussard,
112 S.W.3d at 833.  Evidence may be from oral testimony of witnesses, written
documents, previous judgments, docket entries, or the trial judge’s personal
recollection.  Riner, 976 S.W.2d at 683.  If the trial court relies on
its own personal recollection of the facts, we presume that the court’s
recollection supports the finding of clerical error.  Id.

 

Barton v. Gillespie, No. 01-04-00890-CV, 2005 Tex. App. LEXIS 5129,
*11-13 (Tex. App.—Houston [1st Dist.] June 30, 2005, no pet.).

And another example:

 

   Once a trial court loses plenary power over a
judgment, it can correct clerical, but not judicial, errors by judgment nunc
pro tunc.  Escobar v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986); see
also Tex. R. Civ. P. 316.  A
clerical error is an error in the entry of a judgment; it is a mistake or
omission that prevents the judgment as entered from accurately reflecting the
judgment that was rendered.  Escobar, 711 S.W.2d at 231; Univ.
Underwriters Ins. Co. v. Ferguson, 471 S.W.2d 28, 29-30 (Tex. 1971); Butler v. Cont’l Airlines, Inc., 31 S.W.3d 642, 647 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied.  In contrast, a judicial error arises from a mistake
of law or fact that results from judicial reasoning or determination.  Andrews
v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); LaGoye v. Victoria Wood Condo.
Ass’n., 112 S.W.3d 777, 783 (Tex. App.—Houston [14th Dist.] 2003, no
pet.).  A judicial error occurs in the rendition, as opposed to the entry, of a
judgment.  Escobar, 711 S.W.2d at 311.

 

   Whether the trial court previously rendered
judgment and the content of the judgment are fact questions for the trial
court, but whether an error in the judgment is judicial or clerical is a
question of law.  Id. at 232; Butler, 31 S.W.3d at 647.  Where,
as here, no findings of fact or conclusions of law were filed, the trial
court’s judgment implies all findings of fact necessary to support it.  Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  Because a record was
made of the nunc pro tunc hearing, however, these implied findings are not
conclusive, and Wittau may challenge them by raising both legal and factual
sufficiency of the evidence issues.  Roberson v. Robinson, 768 S.W.2d
280, 281 (Tex. 1989).  We review the trial court’s implied factual
determinations under traditional legal and factual sufficiency standards, but
are not bound by the trial court’s legal determination regarding the nature of
any error in the original judgment.  Roberson, 768 S.W.2d at 281; Escobar,
711 S.W.2d at 232; Finlay v. Jones, 435 S.W.2d 136, 138 (Tex. 1968) (orig. proceeding).

 

Wittau v. Storie, 145 S.W.3d 732, 735-736 (Tex. App.—Fort Worth
2004, no pet.).

And one of the better summaries of how to
distinguish clerical from judicial error is the following excerpt.

   A clerical error results from inaccurately
recording the decision of the court.  Escobar v. Escobar, 711 S.W.2d
230, 231 (Tex. 1986); Dickens, 957 S.W.2d at 659.  To be clerical in
nature, the error must be one that is not the result of judicial reasoning,
evidence, or determination.  Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Gutierrez v. Gutierrez, 86 S.W.3d 721, 726 (Tex. App.—El Paso 2002, no
pet.).  Correction of a clerical error does not effect a substantive change in
the court’s order.  Dickens, 957 S.W.2d at 659.  On the other hand, a
judicial error results from judicial reasoning or determination.  Id.  Substantive change results from correction of a judicial error.  For instance,
an attempt to impose a specific obligation to pay where no such obligation had
previously existed is an unlawful substantive change, not a mere clarification
or correction of a clerical error.  McGehee v. Epley, 661 S.W.2d 924,
925-26 (Tex. 1983); In re Broussard, 112 S.W.3d 827, 833-34 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

 

   The salient distinction between “clerical”
and “judicial” errors lies in the exercise of the judgmental offices of the
court.  Andrews, 702 S.W.2d at 585.  In Andrews, a probate court
order allowed a sale of estate property in accordance with a real estate sales
contract, which included a grant of an easement.  Id.  The recorded deed
failed to mention the easement, however.  Id.  The administrators
obtained from the probate court an order nunc pro tunc correcting the deed to
reflect the conveyance of the easement.  Id.  After the court of appeals
reversed the probate court’s decision, the Texas Supreme Court determined the
correction was proper and affirmed the probate Court’s correction.  Id. at 586.  The court reasoned, since the entry of the order nunc pro tunc would
not involve additional judicial reasoning, the error at issue was clerical in
nature and the probate court could correct the deed to properly reflect the
judgment originally rendered.  Id.

 

   To further illustrate the well-established
rules regarding what qualifies as a judicial error, we look to the 1891 case of
Missouri Pac. Ry. Co. v. Haynes, in which respondents sued the railway
company for the value of eighty-seven bales of cotton, weighing 43,064 pounds,
destroyed by fire negligently caused by the company while the cotton was in its
possession.  82 Tex. 448, 18 S.W. 605 (1891).  There was no controversy over
the number of bales or their weight, and at the trial the railway company did
not deny that eighty-seven bales were burned.  Id.  However, in its
calculation of the gross weight of the cotton destroyed, the trial court
omitted the bill of lading for six bales of cotton.  Id.  Nearly six
months after judgment was rendered, respondents moved the trial court to
correct the judgment to include the value of the six bales.  Id.  The
trial judge testified that he found for respondents the weight of the entire
eighty-seven bales, that he intended to give judgment for that amount, and that
he thought he had done so until the motion to correct the judgment was filed.  Id.  The trial court granted the motion.  Id.  The Texas Supreme Court
disagreed, concluding that respondents’ remedy, if any, would have been by a
timely motion for new trial or by appeal rather than a motion to reform a final
judgment.  Id.  The failure of the court to consider and compute the
value of the six bales of cotton was a judicial error, not a clerical error. 
It was a failure to consider evidence in the case and represented an erroneous
judgment on the facts.  Id.

 

   Similar determinations can be found in cases
involving child support orders and modifications.  For instance, when, after
its plenary power expired, the trial court entered a judgment that ordered a
father to pay $38.00 per month in reimbursement of his child’s healthcare
insurance premiums and the original judgment did not impose such an obligation,
the corrected judgment was ineffective as a judgment nunc pro tunc and was
void.  Broussard, 112 S.W.3d at 833-34.  The attempted correction did
not involve a mere clerical error since it imposed an obligation where
previously there had been none.  Id.

 

In re Marriage of Ward, 137 S.W.3d 910, 913-914 (Tex. App.—Texarkana
2004, no pet.).

          When this reasoning is applied to this
appellate case, the error the majority is trying to correct is judicial, not
clerical.  The corrected judgment imposes court costs on entirely different
entities than was imposed by the original judgment.  The original judgment was
not the result of a clerical error.  Thus, the “Corrected Opinion” and judgment
are void.

          And for the majority to argue that
they did not intend the judgment to be entered against the Christophers and
Williams does not yield a flattering picture of the conduct of their offices. 
In the original dissenting opinion, I directed the readers’ attention to:


 the
 discrepancy between the style of the case on the opinion and the style
 used on appellant’s brief;


 


 the
 fact the medical creditors had never been served in the case below;


 


 the
 only judgment to review among the parties to the case below was the
 settlement/ dismissal with the defendants below; and


 


 “the
 only thing that is clear is that B.G. Williams is NOT a party to this
 appeal.  This appeal is from the claims of Avila against Andy and Daniel
 Christopher which were severed and settled.  The only notice of appeal in
 the record [actually both notices of appeal] gives the original style of
 the case …”


 

Avila v. Christopher, No.
10-04-00021-CV, 2005 Tex. App. LEXIS 5038, *5-11 (Tex. App.—Waco June 29, 2005,
no pet.)(Gray, C.J., dissenting).

     In the face of these comments
in the dissenting opinion, the majority issued an opinion identifying the
Christophers and Williams as the appellees and a judgment awarding costs
against those appellees.  Now they say the original opinion and judgment were
the result of a clerical error.

     So what else could all this
mean?  Of course it could mean the majority read the dissent, but were
consciously indifferent to the problems it identified.  The only other
alternative is that the majority consciously chose not to read the dissenting
opinion.  Under either of these scenarios, the erroneous judgment cannot be
anything other than a judicial error.  They either intended the result originally
rendered, willfully and consciously chose not to correct it when their
attention was directed to this problem by the dissenting opinion, or willfully
and consciously failed to read the original dissenting opinion.

Let’s Start Over

          The discussion of this original case
on appeal could have been addressed very simply.  The appellant failed to
establish a number of the elements to show himself entitled to attorney’s fees
for bringing an interpleader action.  He unreasonably delayed bringing the interpleader
while trying to negotiate a settlement.  He failed to establish himself as an
innocent stakeholder by seeking 66.66% of the interpleaded funds for himself
and as an attorney fee from the fund.

          During negotiations with the medical
creditors Avila graphically demonstrated the delay in tendering the funds was
unreasonable and that Avila was not an “innocent” stakeholder.  This is the
settlement Avila proposed:

          Defendant’s insurance has [sic] the
maximum policy limits of $20,000.00, which this has settled for that amount. 
This is the maximum we can obtain from the defendant’s insurance.  This
settlement amount must be divided 1/3 to the client, 1/3 to the attorney, and
1/3 to all the medical providers, [sic] Please keep in mind and consider
the fact that if the medicals do not decrease, we may be forced to file a
motion of interpleader and have the court decide how much you will get.  Please
keep in mind that this amount ($6,666.66) must cover ALL his outstanding
medical bills.

 

Appendix to Appellant’s Brief, tab K.

 

          The outrageousness may not be
immediately apparent unless you also know the total medicals he was trying to
settle for $6,666 was $72,468, AND that there is another suit pending, the
severed suit against Williams, in which the extent of his medical injuries and
medical expenses will be used to maximize the recovery.  Under Avila’s settlement proposal, the medical creditors’ lien on the recovery in that suit would
be extinguished.

          Further, Avila had not tendered the
funds into the court, which is an element of an interpleader action, holding
them instead in the attorney’s trust account.  Avila held onto the funds so
long he was ordered to pay the funds into the court and it is not clear on the
record before us that he ever did. 

          And, finally, Avila only presented
evidence of his efforts to secure the settlement and efforts to obtain the part
(66.66%) Avila claimed he and his attorney were entitled to out of the fund. 
He presented no evidence of the fees and expenses incurred to bring the interpleader
and, under his theory on appeal, that is all he might have been entitled to
obtain.  And on remand, that will be all that Avila is entitled to under the
majority’s opinion and judgment:  the fees necessary for bringing this
interpleader action – not the fees necessary to obtain the settlement fund. 
And whatever amounts are allocated to the medical creditors on remand, it
should be made clear that this is an allocation of proceeds of a partial settlement
fund and does not extinguish the entirety of their medical creditor lien
as Avila was demanding in his settlement proposal.

Conclusion

          So I conclude where my earlier
dissenting opinion began:

There is simply no pleasant way to say this. 
This case and its appeal have been botched beyond repair, and it is not this
Court’s job to fix it.

 

          Now the majority’s two efforts to
“fix” the case for Avila have become part of the problem.  This dissenting
opinion as well as my original dissenting opinion address why the majority is
wrong on the merits of this appeal.  This dissenting opinion also addresses why
the corrected opinion and judgment are void.  I dissent.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed December 14, 2005









[1]
The case style has been changed by the
majority so I must use their style to make sure the opinions are issued and
kept together.  But, for a number of reasons that will become apparent in this
dissenting opinion, I think this change is in error.