**SLT DEALER GROUP, LTD. dba Alliance Chevrolet, Appellant,**

v.

**AMERICREDIT FINANCIAL SERVICES, INC., Appellee.**

No. 01–09–00613–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 17, 2011.

Michael T. Fuerst, Fuerst Law Firm, Cypress, TX, for Appellant.

Deborah Colleen Simmons Riherd, Donald L. Turbyfill, Devlin, Naylor & Turbyfill, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

This is a breach of contract case. The defendant, SLT Dealer Group, LTD d/b/a Alliance Chevrolet ("Alliance") appeals a final summary judgment granted in favor of the plaintiff, AmeriCredit Financial Services ("AmeriCredit"). We affirm the trial court's judgment.

## BACKGROUND

Alliance is an automobile dealer that offers financing to its customers. When Alliance sells a vehicle under an installment agreement permitting the buyer to make payments over time, Alliance in turn sells that financing contract to a third party. AmeriCredit is an automobile financing company that purchases these types of individual consumer automobile financing contracts from automotive dealers.

### A. The Dealer Agreement

On March 24, 2006, Alliance and AmeriCredit entered into a "Dealer Agreement" providing the terms under which AmeriCredit would buy retail installment contracts from Alliance. The dispute here

involves transactions arising under this Dealer Agreement.

In the Dealer Agreement, Alliance made certain representations about each installment contract to be sold to AmeriCredit under the agreement. These are contained in a section entitled "REPRESENTATIONS, WARRANTIES, AND COVENANTS OF DEALER WITH RESPECT TO EACH CONTRACT," and include:

> The Contract and the Contract Documents will represent a genuine obligation of the Buyer named therein, will be legitimate, valid and binding in accordance with their terms, will be enforceable by AMERICREDIT and its assigned, are free from fraud, and will be subject to no defenses, claims misrepresentations, setoffs or counterclaims of any kind....
>
> The vehicle was sold for the personal use and benefit of the Buyer.
>
> . . . .
>
> No employees or other representatives of Dealer has made any statement or representation to Buyer which conflicts with any terms or provisions contained in the Contract.
>
> . . . .
>
> At the time of the Contract signing Dealer will complete all forms and documents necessary to perfect a valid and enforceable security interest of AMERICREDIT in the vehicle as required by applicable law and forward and file such forms and documents, together with the appropriate fees, with the public officials responsible for issuing the certificate of title or registration to the vehicle within the earlier of (i) the state law time frame for perfection of AMERICREDIT's security interest in the vehicle, or (ii) twenty (20) days from the date of the Contract.
>
> . . . .

> The Contract Documents will represent the entire agreement between Dealer and the Buyer with respect thereto and the Contract Documents will not have been modified, superseded, or waived by any act or omission of Dealer.

## B. The Wallace Contract

On October 4, 2008, Alliance and Gladys Wallace executed a Motor Vehicle Installment Sales Contract ("Wallace Contract") for the purchase of a 2003 BMW 745I ("Wallace Vehicle"). Under the Dealer Agreement, Alliance assigned the Wallace Contract to AmeriCredit and received a check for $56,142.83. As part of this transaction, Alliance sent documents to AmeriCredit that it represented were Wallace's credit application and tax returns.

After Wallace failed to make her first payment on the car, AmeriCredit investigated and discovered irregularities in the transaction and that the underlying documentation contained false information. Wallace had never visited Alliance's dealership. Victor Holmes, one of Alliance's employees, had Wallace sign the Wallace Contract at her home. In exchange for Wallace's signature on the contract, Holmes paid Wallace $500 cash and represented that she would never have to make a payment on the vehicle. Wallace's understanding was that this was an "investment" opportunity, that she was listed as the owner on the contract only "because of [her] credit," and that the car would be sold to someone else within 30 days. She never took possession of the car and denied having ever seen the credit application that Alliance submitted to AmeriCredit containing false information about her occupation and income.

Alliance also failed to disclose to AmeriCredit that Alliance secured financing for several other vehicles in Wallace's name. Holmes was ultimately fired by Alliance

for a number of improprieties, including his involvement in the Wallace deal.

On March 26, 2007, AmeriCredit made a written demand for Alliance to repurchase the Wallace Contract. As support, AmeriCredit relied upon the provisions in the Dealer Agreement in which Alliance represented that all financing contracts assigned under the agreement would be "legitimate, valid and binding . . . and free from fraud," and in which Alliance agreed to repurchase any contract if its obligations were breached. Alliance did not repurchase the Wallace contract.

On April 12, 2007, a mechanic's lien securing the cost of significant repairs was placed on the Wallace Vehicle by an unrelated third-party. On May 17, 2007, following foreclosure on the mechanic's lien, the Wallace Vehicle was auctioned off and sold to a new owner who is not a party to these proceedings for $2,000.

## C. The Garcia, Burditt, and Morton Contracts

Between June 5 and June 11, 2007, in conjunction with the sale of three other vehicles, Alliance executed three other installment sales contracts: one with Adolfo Garcia ("Garcia Contract"), one with Tammie Burditt ("Burditt Contract"), and one with Monique Morton ("Morton Contract"). The Garcia, Burditt, and Morton Contracts were assigned to AmeriCredit under the Dealer Agreement. After Alliance failed to repurchase the Wallace Contract, AmeriCredit exercised its right under the Dealer Agreement to offset $57,509.40 owed it for Alliance's repurchase of that contract against funds AmeriCredit owed Alliance for the Garcia, Burditt, and Morton Contracts. Because this offset satisfied Alliance's repurchase obligation with regard to the Wallace Contract, on July 13, 2007, AmeriCredit sent Alliance the original Wallace Contract, the title to the Wallace Vehicle, and an Assignment without Recourse Form.

After AmeriCredit notified Alliance about its offset against payment owed for the Garcia, Burditt, and Morton Contracts, Alliance executed new contracts with Garcia, Burditt, and Morton. Alliance then sold these new contracts to different finance companies (other than AmeriCredit) and arranged for the Garcia, Burditt, and Morton vehicles to be titled with perfected security interests in favor of lenders or finance companies other than AmeriCredit. On February 19, 2008, AmeriCredit demanded that Alliance repurchase the Garcia, Burditt, and Morton Contracts because Alliance had failed to perfect security interests on the underlying vehicles in AmeriCredit's favor. Alliance refused. On July 10, 2008, AmeriCredit sued Alliance for breach of contract, asserting that Alliance's assigning the new Garcia, Burditt, and Morton contracts to other companies—while refusing to repurchase the Garcia, Burditt, and Morton Contracts it previously assigned to AmeriCredit—violated the Dealer Agreement.

## D. The Underlying Proceedings

Following the close of discovery, AmeriCredit moved for summary judgment on its breach-of-contract claim and claim for attorney's fees. In response, Alliance amended its answer to add the assertion that "not all conditions precedent to maintaining this suit have been met by Plaintiff." Alliance then filed a response to AmeriCredit's motion for summary judgment, asserting genuine issues of material fact exist concerning (1) whether Alliance breached the Dealer Agreement because AmeriCredit "violated its own policies" with regard to pursuing repossession of the Wallace Vehicle, and (2) whether conditions precedent concerning assignment of the Garcia, Burditt, and Morton Contracts occurred since security interests

were never perfected on those vehicles in favor of AmeriCredit.

On April 3, 2009, the trial court granted a final summary judgment in AmeriCredit's favor, awarding $57,509.40 in actual damages and $16,066.00 in attorney's fees. On April 15, 2009, AmeriCredit filed a motion to modify the judgment to add an award of conditional appellate attorney's fees that were proven up and uncontroverted in the summary judgment briefing. On May 12, 2009, AmeriCredit filed an amended motion to modify the judgment requesting the same relief as in its earlier motion and expanding on its earlier arguments. On June 1, 2009, the trial court signed an order granting AmeriCredit's motion to modify. That same day, the trial court signed an amended final summary judgment, adding the requested conditional award of appellate attorney's fees.

Alliance perfected its appeal of the June 1, 2009 judgment on July 1, 2009. On July 20, 2009, AmeriCredit filed a motion to amend the judgment nunc pro tunc, requesting the court's award of "$4,00.00" for an appeal to the Court of Appeal ….." be changed to "$4,000.00 for an appeal to the Court of Appeals …." to conform to the requested relief and supporting evidence. On July 30, 2009, the trial court signed an order granting AmeriCredit's motion and, on August 20, 2009, signed the new judgment nunc pro tunc.

## ANALYSIS

Alliance raises four arguments on appeal. In its first two points, it argues that summary judgment was inappropriate because fact issues exist concerning (1) "whether AmeriCredit's disposition of the collateral in the Wallace Contract was commercially reasonable," and (2) "whether the conditions precedent to the Garcia, Burditt, and Morton contracts occurred." In its third point, it argues that the trial court's "order granting [AmeriCredit's] First Amended Motion to Modify is a nullity because it violates the rule prohibiting more than one final judgment." Finally, in its fourth point, Alliance argues that the trial court's "two judgments nunc pro tunc are void because they attempt to correct a judicial error rather than a clerical error."[1] Finding no error in the trial court's judgment, we affirm.

## SUMMARY JUDGMENT

### A. Standard of Review

To prevail on a Rule 166a(c) summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). The evidence raises a genuine issue of fact if reasonable and fair-minded

---

1. Although Alliance references "two judgments nunc pro tunc," there is only one judgment nunc pro tunc—the one signed August 20, 2009. The July 30, 2009 order Alliance refers to as another judgment nunc pro tunc was the court's order granting the motion for judgment nunc pro tunc.

jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007).

On appeal, we review de novo a trial court's summary judgment ruling. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006).

### B. Breech of Contract

■ Alliance asserts that the trial court erred in granting AmeriCredit's motion for summary judgment on AmeriCredit's breach-of-contract claim. To be entitled to summary judgment on this claim, Ameri-Credit was required to prove, as a matter of law, the following essential elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *See B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex.App.-Houston [1st Dist.] 2009, pet. denied).

■ Contracts should be construed by giving effect to the parties' intent as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996). "The contract must be read as a whole, rather than by isolating a certain phrase sentence, or section of the agreement." *Baty v. ProTech Ins. Agency,* 63 S.W.3d 841, 848 (Tex. App.-Houston [14th Dist.] 2002, pet. denied) (citing *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995)). Contract language is given its plain gram-

matical meaning unless doing so would defeat the parties' intent. *DeWitt Cnty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999).

In its first point of error, Alliance contents that "AmeriCredit permitted the Wallace vehicle to be sold pursuant to the mechanics lien and failed to obtain any value for the Wallace vehicle." Thus, according to Alliance, "[g]enuine issues of material fact exist concerning whether Americredit's actions were commercially reasonable." In support, Alliance cites the Texas Business and Commercial Code provisions governing disposition of collateral:

> Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Tex. Bus. & Com.Code Ann. § 9.610(b) (Vernon 2002). Because the liability of a debtor or secondary obligor may be reduced if collateral is not disposed of in a commercially reasonable manner, *id.* § 9.626, Alliance argues that AmeriCredit's failure to provide evidence that "disposition of the Wallace vehicle was a sincere effort to obtain a full market value for the collateral" rendered summary judgment on its breach-of-contract claim inappropriate.

In response, AmeriCredit contends that the law mandating commercially reasonable disposition of collateral is inapplicable because that duty is triggered only when the secured party has taken possession of its collateral and intends to obtain a deficiency judgment against the maker of a note. *See id.* § 9.610. AmeriCredit further points out that the duty to prove the commercial reasonableness of a sale does not arise unless the debtor specifically de-

nies the commercial reasonableness in its answer, which Alliance did not do here. *See Greathouse v. Charter Nat'l Bank–Sw,* 851 S.W.2d 173, 176–77 (Tex.1992).

■ We agree with AmeriCredit that the duty to prove commercial reasonableness never came into play because Ameri-Credit did not repossess or dispose of the Wallace Vehicle. The record reflects that an unrelated third-party placed a mechanic's lien on the vehicle to secure cost of repairs. Alliance complains that Ameri-Credit received notice of this mechanic's lien and "failed to do anything to protect or recover its collateral." In other words, Alliance concedes that AmeriCredit did not possess or dispose of the collateral, but protests that AmeriCredit should have been more aggressive in repossessing the vehicle. Alliance cites no authority, and we have located none, applying section 9.610's duty of commercial reasonableness to a creditor who does not possess or dispose of collateral. We overrule Alliance's first point.

Alliance next argues that there "are genuine issues of material fact concerning whether the conditions precedent were met concerning the Garcia, Burditt, and Morton" Contracts. In support, Alliance cites a section in the Dealer Agreement entitled "Conditions Precedent to Sale and Purchase of Contracts" that includes, as one condition precedent: "The security interest and liens granted under this Agreement and Contracts have been properly perfected in favor of AmeriCredit." The record reflects that, after assigning the Garcia, Burditt and Morton Contracts to AmeriCredit, rather than securing liens on the associated vehicles in favor of Ameri-Credit, Alliance entered new contracts with lenders other than AmeriCredit and secured liens on these vehicles in their favor of lenders other than AmeriCredit. According to Alliance, its own failure to perfect the security interests in AmeriCredit's favor with respect to the Garcia, Burditt, and Morton vehicles renders the entire Dealer Agreement inapplicable and therefore not subject to breach.

In response, AmeriCredit insists the Dealer Agreement must be looked at as a whole, arguing that it "is clear, from a plain reading of the entire contract, that the 'condition precedent' as set forth in ... the Dealer Agreement is an obligation on the part of Alliance to perfect AmeriCredit's security interest in a vehicle described in the retail installment contract that AmeriCredit purchases from Alliance." AmeriCredit urges us to reject Alliance's "circular reasoning" that would permit Alliance's failure to perform its own obligations to bar AmeriCredit's breach-of-contract claim against Alliance. In support of its argument that the Dealer Agreement, taken as a whole, cannot be read to mandate perfection of a security interest as a prerequisite to a binding contract, AmeriCredit points us to the sections of the contract dealing specifically with the timing of perfecting security interests and AmeriCredit's available remedies if Alliance fails to timely perfect an interest in AmeriCredit's favor:

> At the time of the Contract signing, Dealer will complete all forms and documents necessary to perfect a valid and enforceable security interest of AMERI-CREDIT in the vehicle as required by applicable law and forward and file such forms and documents, together with the appropriate fees, with the public officials responsible for issuing the certificate of title of registration to the vehicle within the earlier of (i) the state law time frame for perfection of AMERICREDIT'S security interest in the vehicle, or (ii) twenty (20) days from the date of the Contract ...
>
> . . . .

Dealer warrants that the security interests and lien of AMERICREDIT for each contract purchased by AMERICREDIT shall be completed within twenty (20) days of Buyer's date of purchase. Failure of the dealer to perfect and transfer title reflecting AMERICREDIT'S security interest and lien within this time period will subject the contract to repurchase . . .

 Conditions precedent may be either a condition to the formation of a contract or an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). "[W]hen the intent of the parties is doubtful or when a condition would create an absurd or impossible result, courts should interpret agreements as creating covenants and not conditions." *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 383 (Tex.App.-Corpus Christi 1990, writ denied) (citing *Hohenberg Bros. Co.*, 537 S.W.2d at 3). Interpreting a clause as a condition precedent leading to forfeiture should be avoided when another reasonable reading of a contract exists. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987).

 Irrespective of the section subtitle "Condition Precedent," the requirement that Alliance perfect a security interest in AmeriCredit's favor—read in conjunction with the rest of the provisions dealing with timing of the perfection of security interest—is a covenant, not a condition. The Dealer Agreement contains Alliance's warranty that security interests "for each Contract purchased by Americredit shall be completed within" 20 days of the vehicle buyer's purchase. And the agreement specifically provided that, if Alliance fails to transfer title and perfect a security interest "within this time period," AmeriCredit can require Alliance to repurchase the contract. These provisions contemplate AmeriCredit's purchase of the contract *before* the title is transferred and the security interest is perfected, or AmeriCredit's repurchase option would be meaningless. In other words, if the contract mandated perfection of the lien as a prerequisite to AmeriCredit's purchase of the contracts, then the option to compel Alliance's repurchase for failure to timely perfect such interest (which necessarily contemplates a sale from Alliance to AmeriCredit has already taken place) could never be invoked.

Alliance urges us to reconcile these various provisions by holding that if a security interest is perfected in AmeriCredit's favor, but not within 20 days, AmeriCredit has the right to demand Alliance repurchase the contract. But, if instead Alliance *never* perfects the security interest in AmeriCredit's favor—as happened in this case—AmeriCredit cannot compel Alliance's repurchase.

Here, AmeriCredit accepted assignment of the Garcia, Burditt, and Morton Contracts. As permitted by the Dealer Agreement, AmeriCredit paid Alliance for those contracts by offsetting the amount owed on the Wallace Contract and tendering the Wallace Contract and title back to Alliance as repurchased. Alliance then perfected a security interests in the Garcia, Burditt, and Morton vehicles in favor of companies other than AmeriCredit so that AmeriCredit had no ability to receive installment contract payments from Garcia, Burditt, and Morton. Under Alliance's interpretation, if Alliance's performance had been untimely, AmeriCredit could demand repurchase, but because Alliance never performed, AmeriCredit is without recourse. We reject this interpretation as it "plainly violate[s] the intent of the parties and would lead to an absurd result, in clear violation of the rules of contract construction." *Henry v. Masson*, 333 S.W.3d 825,

846 (Tex.App.-Houston [1st Dist.] 2010, no pet.).

■ While Alliance seeks to avoid its own obligations to perform under the Dealer Agreement by relying on its own failure to perfect a security interest in AmeriCredit's favor, it notably cites no cases holding that a party's failure to perform a condition precedent excuses that own party's obligations. As a general rule, "one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance." *II Deerfield Ltd. P'ship v. Henry Bldg. Inc.*, 41 S.W.3d 259, 265 (Tex.App.-San Antonio 2001, pet. denied). We overrule Alliance's second point of error.

### AMENDED JUDGMENT

In his third point of error, Alliance argues that the trial court's "order granting the First Amended Motion to Modify is a nullity because it violates the rule prohibiting more than one final judgment." *See* Tex.R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specifically provided by law."). Alliance acknowledges that a trial court can modify a final judgment while it retains plenary power, but asserts that the "entry of a second judgment in the same case does not automatically vacate the first judgment, and if there is nothing in the record to show that the first judgment was vacated, the second judgment is a nullity." *Exxon Corp. v. Garza*, 981 S.W.2d 415, 419 (Tex.App.-San Antonio 1998, pet. denied); *see also Thompson v. Ballard*, 149 S.W.3d 161, 166 (Tex.App.-Tyler 2004, no pet.).

AmeriCredit agrees that there can be but one final judgment, but argues that "as long as the court has plenary power over a judgment, it is not technically final," *Woos-ley v. Smith*, 925 S.W.2d 84, 86–87 (Tex. App.-San Antonio 1996, no pet.), and, during that period, the trial court may "modify, correct, or reform the judgment." Tex.R. Civ. P. 329b(e). AmeriCredit also contends that the cases cited by Alliance are inapplicable because they do not involve situations in which, as here, a new judgment is entered in response to a party's motion modify, correct, or reform a judgment.

The trial court signed the Final Summary Judgment on April 3, 2009. On April 15, 2009, within the court's plenary power, AmeriCredit filed a motion to modify that judgment requesting the addition of an award of appellate attorney's fees. Tex.R. Civ. P. 329b(a) ("A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed.") The trial court's order granting that motion to modify and the court's First Amended Final Summary Judgment were both signed June 1, 2009, which was 59 days after the original judgment was signed and well within the court's plenary power that had been extended by the filing of AmeriCredit's motion to modify the judgment. Tex.R. Civ. P. 329b(c), (e).

AmeriCredit's motion to modify complained that judgment was entered "without recitation of an award of appellate attorney's fees against Defendant." In that motion, AmeriCredit directed the court to the uncontroverted summary judgment evidence supporting the award of such fees, and requested entry of an amended judgment that included such an award. On May 21, 2009, the trial court signed an order reciting that the judgment "will be modified to include an award of appellate attorney's fees." On June 1, 2009, the court signed the new judgment, entitled "First Amended Final Summary Judgment," which contained substantively

all the same terms from the April 4, 2009 judgment and added an award of attorney's fees.

 This second judgment is not a nullity. "Any change in a judgment made during the trial court's plenary power is treated as a modified or reformed judgment that implicitly vacates and supersedes the prior judgment, unless the record indicates a contrary intent." *Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 441 (Tex.App.-San Antonio 2004), *pet. denied*, 209 S.W.3d 90 (Tex.2005); *see also Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 39 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (inferring from entry of modified judgment during trial court's plenary power that court intended prior judgment be vacated). Nothing in the record indicates the trial court did not intend that its second judgment supersede the first. And the language of the trial court's May 21, 2009 order granting the motion to modify (stating judgment "will be modified"), taken together with the inclusion of the word "Amended" in the title of the second judgment, indicates the trial court's intent that the second judgment replace the first. *Cf. City of West Lake Hills v. State*, 466 S.W.2d 722, 726–27 (Tex.1971) (including "Corrected" in title of second judgment entered during trial court's plenary power indicated court's intent that second judgment replace earlier entered judgment). We overrule Alliance's third point.

### JUDGMENT NUNC PRO TUNC

In its fourth point, Alliance argues that the trial court's August 20, 2009 "First Amended Final Summary Judgment nunc pro tunc" is void because it was entered after the court's plenary power expired and corrected a judicial error—not a clerical one. AmeriCredit responds that the August 20, 2009 nunc pro tunc judgment merely corrected a typographical error, which is the type of clerical error a court may correct anytime, even after its plenary power has expired.

The uncontroverted attorney's fees affidavit in support of AmeriCredit's motion for summary judgment stated, in part, that a reasonable fee for appellate representation of AmeriCredit would be "$4,000.00 for an appeal to the Court of Appeals." The trial court's June 1, 2009 First Amended Final Summary Judgment contained a conditional award of attorney's fees of "$4,00.00 for an appeal to the Court of Appeals." AmeriCredit's motion to amend judgment nunc pro tunc requested the trial court change the amount of awarded conditional appellate attorney's fees from "$4,00.00" to "$4,000.00." The trial court granted the motion and signed a judgment nunc pro tunc reflecting this change.

 The court can correct a clerical error in the judgment at any time, even after it loses plenary power over the judgment. TEX.R. CIV. P. 316. A clerical error is a mistake that prevents the judgment, as entered, from accurately reflecting the judgment as actually rendered. *Universal Underwriters Ins. Co. v. Ferguson*, 471 S.W.2d 28, 29–30 (Tex.1971). In contrast, a judicial error arises from a mistake of law or fact that requires judicial reasoning or determination to correct. *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Determining whether the error is judicial or clerical is a question of law. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex.1986).

 The trial court's judgment contained an award of attorney's fees of "$4,00.00," which is not a legitimate dollar figure. The only evidence concerning appellate fees before the court when the

judgment was signed supports the inference that the judgment the court intended to enter was for "4,000.00." This Court has previously found a substantively identical error to be clerical. *Fiske v. Fiske*, No. 01–03–00048–CV, 2004 WL 1847368, at *5 (Tex.App. Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (nunc pro tunc judgment changing award from "$50,00.00" to "50,000.00" corrected clerical error). We overrule Alliance's fourth point of error.

## CONCLUSION

We affirm the trial court's judgment.