**Opinion issued July 12, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00521-CV

———————————

**ROBERT C. PRUETT, Appellant**

**V.**

**CITY OF GALENA PARK, Appellee**

---

On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2016-35876

---

**MEMORANDUM OPINION**

Appellant Robert C. Pruett was a long-time employee of appellee the City of Galena Park (the City), serving as a police officer, chief of police, and city administrator over more than twenty years. Following a tumultuous election and resulting upheaval in the City's mayoral office and City Commission, Pruett

resigned. He subsequently sought severance pay pursuant to a City ordinance providing for severance benefits to certain long-term employees and pursuant to a purported Severance Agreement between him and the City. The City opposed paying severance benefits. The City filed a petition seeking declaratory judgment construing the ordinance and Severance Agreement, and Pruett alleged counter-claims challenging the City's construction of the ordinance and agreement and alleging that the City had breached its contract with him. Both parties filed motions for summary judgment, and, after several interlocutory rulings, the trial court rendered judgment granting the City's motion and denying Pruett's.

On appeal, Pruett contends that the trial court erred (1) in granting the City's motion for summary judgment and denying his own motion and (2) in denying his request for attorney's fees pursuant to Civil Practice and Remedies Code chapters 37 and 38. Because we conclude that the ordinance in question did not, by itself, support Pruett's claim for severance benefits and the purported agreement between the parties was invalid, we affirm.

## Background

Robert C. Pruett served the City of Galena Park as a police officer starting in 1993. He eventually became the Chief of Police in 2000, and he became the City Administrator in 2012. In 2014, mayoral candidate Esmerelda Moya ran on a platform that included efforts to eliminate the position of City Administrator.

Pruett presented summary judgment evidence that Moya targeted him personally during this contentious election and, upon her election to office, attempted to have him removed from office. The governing body of the City—the City Commission[1]—voted against removing Pruett.

After this attempt to remove him, the City Commission adopted Ordinance 2015-10, which stated that its purpose was to amend the City's personnel ordinance to provide for severance package agreements and benefits for certain long-term employees. The Ordinance further stated, "It is the intent of this ordinance to provide severance protection to long term senior Department Heads and certain Key Employees of the City[.]" The Ordinance defined key terms, including "Department Head," which expressly included the City Administrator, and "Key Employee." The Ordinance also defined "Severance Agreement" as "the agreement between the covered employee and the City entered into pursuant to this ordinance and the terms and conditions of the severance agreement."

Ordinance 2015-10 then provided for compensation upon termination under certain circumstances:

> If the Department Head or Key Employee's employment is terminated by the City Commission Without Good Cause or by the Department Head or Key Employee With Good Reason during the employment period, the City Commission shall provide to the Employee the

---

[1] The City is a Texas home rule city operating under a city charter that provides for the business of the City to be conducted by the mayor and four Commissioners. Galena Park charter art. IX, Sec. 1; Galena Park Code § 2-47.

3

accrued obligations, severance compensation and other benefits set forth in this ordinance and in the severance agreement of the parties.

The Ordinance defined "Good Cause" as including "[w]illful or negligent failure to fulfill and perform the duties required by his job or employment," and it defined "Voluntary termination for Good Reason" as including "any willful and deliberate action by the City Commission that creates a hostile work environment so as to make continued employment unbearable." Severance benefits were not available for terminations by the City with Good Cause or "[i]n the event the Department Head or Key Employee voluntarily retires, becomes disabled and is unable to perform his required duties, or dies during his employment."

The Ordinance set out a method for determining the severance amount, stating that the amount should be a lump-sum payment consisting of "one month's base wages for every year of service" but that "the total severance pay paid to such employee shall not exceed twenty-four (24) months." The Ordinance also set out a procedure to "Contest and Appeal" a termination:

> **G. Contest and Appeal of termination.** (1) The Department Head or Key Employee may contest and appeal the decision of the City Commission to terminate his employment for "Good Cause" by requesting that the decision be submitted to an Arbitration Hearing before an independent hearing examiner or arbitrator within ten (10) days of such employee's termination. The hearing examiner or arbitrator shall be selected and the hearing shall be held pursuant to the American Arbitration Association Rules and Regulations. (2) The City Commission may also contest and appeal the decision of the Department Head or Key Employee to terminate his employment for "Good Reason" by requesting that the decision be submitted to an

4

Arbitration Hearing before an independent hearing examiner within 10 days of such employee's delivery of his written notice to terminate his employment for "Good Reason" to the City Secretary of the City of Galena Park. The hearing examiner or arbitrator shall be selected and hearing shall be held pursuant to the American Arbitration Association Rules and Regulations.

The Ordinance also contained a "Severance Agreement" provision:

**I. Severance Agreement[.]** After the Department Head or Key Employee accumulates twenty (20) years of employment with the City, the City Commission will provide a formal Severance Agreement in such form as it may deem proper and in accordance with the terms and conditions of this ordinance. Such formal agreement must be agreed to and executed by the Department Head or Key Employee in order for such employee to be entitled to the benefits of severance pay provided in this ordinance.

And the Ordinance contained a severability clause, providing that "any section, paragraph, sentence, clause, or phrase contained in this ordinance" that becomes illegal, null, or void could be severed and the remaining sections "shall not be affected thereby."

Ordinance 2015-10 was adopted by the then-sitting City Commission, but it was not signed by Mayor Mora. Rather, it was signed by Mayor Pro Tem Maricela Serna.

On March 15, 2016, Pruett filed suit in federal court regarding Moya's unsuccessful attempt to remove Pruett as City Administrator. He sought relief pursuant to the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. These claims were ultimately dismissed.

5

In May 2016, Pruett and the four then-sitting Commissioners—Juan Flores, Maricela Serna, Cruz Hinojosa, Jr., and Danny Simms—signed a "Severance Agreement." The purported Severance Agreement provided for Pruett to receive severance benefits as provided for in Ordinance 2015-10 if he resigned for good reason, and it contained a mandatory arbitration provision. However, the purported Severance Agreement was not presented to the City Commission as a formally convened body in an open meeting, nor was it voted on or approved by the Mayor. No public notice was given of a meeting to approve or ratify the purported Severance Agreement. The purported Severance Agreement was not signed by the Mayor, the City Secretary, or the City Attorney.

On May 7, 2016, Flores, Serna, Hinojosa, and Sims lost their bids to be re-elected to the City Commission. In addition to the election of the new Commissioners—Rodney Chersky, Oscar Silva, Eric Broussard, and Barry Ponder—Mayor Moya was re-elected.

Following this election, the City Commission provided the required notice of its next meeting, including an agenda. The agenda stated that the Commission would canvass the election results and swear in the new Commissioners. The agenda also included consideration and voting on proposed Ordinance 2016-01, which would rescind Ordinance 2015-10.

Pruett signed a resignation letter dated May 16, 2016. The resignation letter stated that his resignation would take effect at 5:00 pm on May 16, 2016. Pruett stated, "I have reviewed the city council agenda and it is clear to me that you have once again violated the Open Meetings Act with yet another walking quorum in an attempt to fire both me and Chief of Police John Rader and beat both of us out of the severance package that the City Council has previously approved." Pruett identified other actions that he believed violated the City Charter and state law and stated, "For these and other reasons, I cannot in good conscience continue my employment with the City of Galena Park. Please immediately tender my severance package payment to my home address[.]"

The City Commission accepted his resignation at the May 17, 2016 meeting. The Commission also passed Ordinance No. 2016-01, repealing Ordinance 2015-10. In adopting Ordinance 2016-01, the City Commission found that "[w]hen Ordinance 2015-10 was adopted, no provision was made to fund the benefits descried therein," and that "the city commission believes that it is not in the public interest to provide the benefits described in Ordinance 2015-10."

On May 20, 2016, Pruett presented his purported Severance Agreement to the City by sending it to the City Secretary's office. The document was added to his personnel file. On May 24, 2016, Pruett's counsel sent a letter to the Mayor

7

demanding full severance benefits under Ordinance 2015-10 and requesting that the matter be arbitrated if the City refused.

On May 31, 2016, the City commenced the underlying suit by filing its original petition "to Stay Arbitration." In this petition, the City sought declaratory and injunctive relief.[2] Pruett counter-petitioned, seeking a declaratory judgment that both Ordinance 2015-10 and the purported Severance Agreement were valid. Pruett further requested that "the Court determine and declare whether the conditions precedent to performance have been met under both Ordinance 2015-10 and the severance agreement, such that Pruett would be entitled to severance benefits as provided in the Ordinance." Pruett also alleged that the City breached its contract with him.

The parties filed cross motions for summary judgment. Significant here, the City asserted that Ordinance 2015-10 was not valid.[3] It argued that repealed Ordinance 2015-10 was not "self-executing" and that a written severance contract was required for any severance benefits to be authorized. The City further argued

---

[2]   The City's petition was originally filed to prevent Pruett's attempt to arbitrate the dispute between himself and the City. As the litigation progressed, the demand for arbitration was eventually dropped.

[3]   The City's motion for summary judgment was filed in light of its efforts to prevent Pruett from arbitrating the dispute between the parties. Although its challenge to the validity of Ordinance 2015-10 and the purported Severance Agreement was phrased in terms of invalidating any agreement to arbitrate, the City's arguments, as set out above, stated arguments generally applicable to the validity and enforceability of the Ordinance and the Severance Agreement.

that Ordinance 2015-10 was not validly adopted because it was signed by the Mayor Pro Tem rather than the Mayor and proper public notice was not given. The City further challenged the validity of the purported Severance Agreement. Pruett, in his motion for summary judgment, argued that both Ordinance 2015-10 and his Severance Agreement were valid and enforceable and entitled him to severance benefits.

The trial court made several interlocutory rulings while these motions for summary judgment were pending. On February 13, 2020, the trial court signed an order resolving some of the issues raised in the motions for summary judgment. The order stated that the trial court "does not rule on the merits of the City's motions, but instead finds that the City does not have standing" to challenge various aspects of the adoption of the Ordinance and purported Severance Agreement.

Litigation continued between the parties, and on February 4, 2020, the trial court signed its "Agreed Amended Order Declaring [the purported Severance Agreement] Unenforceable." This order stated, "On December 18, 2019, came on for consideration the validity of the severance agreement between the City of Galena Park and Robert Pruett arising from Ordinance No. 2015-10 and made the subject of this action." The trial court "found the severance agreement to be void and unenforceable."

9

On February 25, 2020, the trial court signed orders stating only that it granted the City's motion for summary judgment and denied Pruett's motion for summary judgment. These orders did not state the grounds for the trial court's rulings, nor did they contain any declarations.

Pruett subsequently filed a "Cross-motion for Attorney's Fees and Entry of Final Judgment." He sought attorney's fees pursuant to the Declaratory Judgment Act (DJA). *See* TEX. CIV. PRAC. & REM. CODE § 37.009. The City likewise sought attorney's fees pursuant to the DJA.

The trial court rendered its final judgment on July 14, 2020. The final judgment stated, "This Court, recognizing its authority under [Chapter] 37 of the Texas Civil Practice & Remedies Code, decides not to exercise its discretion in awarding fees to any Party to this litigation. By signing this Order, the February 25, 2020 Summary Judgment Order is final and appealable. All relief not granted by this Order is DENIED." This appeal followed.

**Summary Judgment**

In his first issue, Pruett challenges the trial court's judgment, rendered on the basis of the parties' cross-motions for summary judgment.

**A.    Standard of Review**

Summary judgment is appropriate only when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV.

10

P. 166a(c). On cross-motions for summary judgment, "each party bears the burden of establishing that it is entitled to judgment as a matter of law." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018); *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 46 (Tex. App.—Houston [1st Dist.] 2019, no pet.). When both parties move for summary judgment and the trial court denies one motion but grants the other, we examine the summary-judgment evidence presented by each party, determine all issues presented, and render the judgment that the trial court should have rendered. *Fallon*, 586 S.W.3d at 46; *Tarr*, 556 S.W.3d at 278–79; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

## B.    Construction of Ordinance 2015-10

As part of his first issue challenging the trial court's ruling granting the City's motion for summary judgment and denying his own motion for summary judgment on his breach of contract claim, Pruett argues that the City "entered into a contractual agreement with [him] for a severance or retirement package in the event he should be fired or should resign for good cause" and that this agreement was "memorialized, not created, or was confirmed and independently created, by the passage of a City ordinance: No. 2015-10." Pruett argues that "[t]he Ordinance created, by its very passage, a valid and subsisting contract between the City and [Pruett]."

11

The City challenges this assertion, arguing in relevant part that the Ordinance did not create a binding obligation on the City. In its motion for summary judgment, the City argues that Ordinance 2015-10 was "not a stand-alone contract and create[d] no self-executing obligation against the City." Rather, the City argued that the Ordinance "was intended to amend the City's Personnel Policy to authorize the Commission to enter into severance agreements with eligible employees," and the Ordinance required that the City Commission "must still enter separate, written severance agreements with eligible employees in a form [it] deemed proper." In its brief on appeal, the City cites these arguments to support its contention that the trial court's judgment based on the parties' cross-motions for summary judgment was proper.

We agree with the City that Ordinance 2015-10 cannot be construed as a stand-alone contract for the City to pay Pruett severance benefits.

In construing municipal ordinances, we apply the same rules that govern the construction of state statutes. *Powell v. City of Hous.*, 628 S.W.3d 838, 842 (Tex. 2021); *Hotze v. Turner*, 634 S.W.3d 508, 515 (Tex. App.—Houston [14th Dist.] 2021, pet. filed). The proper construction of an ordinance is a question of law we review de novo. *Powell*, 628 S.W.3d at 842. "In construing a municipal ordinance, we seek to determine and give effect to the intent of the governing body of the municipality." *Hotze*, 634 S.W.3d at 515. "We ascertain that intent from the

12

language the governing body used in the ordinance—if the meaning of the ordinance's language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words." *Id.* "We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the governing body chose." *Id.*

Pruett argues that Ordinance 2015-10 is an enforceable contract for severance pay, citing *City of Houston v. Williams*. In *Williams*, the Supreme Court of Texas addressed whether a lawsuit by 540 former Houston Firefighters against the City of Houston for underpayment of lump-sum severance benefits was barred by governmental immunity. 353 S.W.3d 128, 131–32 (Tex. 2011). The Firefighters relied on Local Government Code section 271.152, waiving governmental immunity for certain suits alleging breach of written contract, arguing that certain City of Houston ordinances and three agreements negotiated between the Firefighters' union and the City constituted written agreements that fell within section 271.152's waiver. *Id.* In this context, the supreme court considered whether certain City of Houston ordinances constituted a unilateral employment contract. *Id.* at 135–36.

The *Williams* court concluded, "[I]n some circumstances, an ordinance or group of ordinances can constitute a unilateral contract." *Id.* at 136. The court outlined the specific provisions contained in the City of Houston ordinances that

13

constituted the terms of the agreement of the City of Houston to pay certain benefits to its Firefighters, and it concluded that the ordinances in that case comprised a contract:

> "A promise, acceptance of which will form a contract, 'is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'" *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2(1)). The City manifested its intention to act in a specific way in the Ordinances by its extensive use of the word "shall" and similar provisions that make the benefits offered to the Firefighters mandatory upon performance.

*Id.* at 138 (footnote omitted); *see also Saifi v. City of Texas City*, No. 14-13-00815-CV, 2015 WL 1843540, at *5–6 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no pet.) (mem. op.).

Thus, courts look to the terms of the ordinance itself to determine whether the ordinance constituted an agreement. *See Saifi*, 2015 WL 1843540, at *5 (analyzing *Williams* opinion and stating, "After examining the ordinances in detail, the court determined that the ordinances constituted a unilateral employment contract with the city"); *see also Williams*, 353 S.W.3d at 136–37 (discussing general standing ordinances as unilateral contracts and citing cases such as *S. Union Co. v. City of Edinberg*, 129 S.W.3d 74, 76 (Tex. 2003) (construing city's ordinance that "embodied" franchise agreement between municipality and gas company as contract and discerning from it parties' intent and scope of their

14

respective obligations) and *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840–41 (Tex. 2000) (construing two ordinances and related documents together as single agreement)).

Looking to the plain language of Ordinance 2015-10, we conclude that it is distinguishable from the ordinances in *Williams*. We disagree with Pruett's contention that the Ordinance, by itself, constitutes a contract promising him severance pay. Ordinance 2015-10 provided for severance compensation upon termination under certain circumstances, in accordance with the terms of the ordinance itself *and* a formal- severance agreement:

> If the Department Head or Key Employee's employment is terminated by the City Commission Without Good Cause or by the Department Head or Key Employee With Good Reason during the employment period, the City Commission shall provide to the Employee the accrued obligations, severance compensation and other benefits set forth in this ordinance and *in the severance agreement of the parties*.

(Emphasis added.) The Ordinance defined "Severance Agreement" as "the agreement between the covered employee and the City entered into pursuant to this ordinance and the terms and conditions of the severance agreement." And the Ordinance contained a "Severance Agreement" provision:

> **I. Severance Agreement[.]** After the Department Head or Key Employee accumulates twenty (20) years of employment with the City, the City Commission will provide a formal Severance Agreement in such form as it may deem proper and in accordance with the terms and conditions of this ordinance. Such formal agreement must be agreed to and executed by the Department Head or

15

Key Employee in order for such employee to be entitled to the benefits of severance pay provided in this ordinance.

By its plain language, Ordinance 2015-10 contemplates the creation of a severance agreement for individual employees who would qualify for severance benefits under the ordinance. And it provided that such an agreement would be created by the City Commission "in such form as [the Commission] may deem proper" and that the formal agreement "must be agreed to and executed by the Department Head . . . in order for such employee to be entitled to the benefits of severance pay provided in this ordinance." Thus, although Pruett argues that Ordinance 2015-10 "created a present right, one not contingent upon any future occurrence or condition precedent other than the resignation for good cause by [Pruett]," the Ordinance itself indicates that that the payment of severance benefits was contingent upon the creation and execution of a formal severance agreement.

We conclude that the Ordinance, by itself, did not entitle Pruett to severance pay. By its plain language, a formal severance agreement created according to the terms of the Ordinance and properly executed by the parties was required. The trial court rendered an interlocutory order, based on the agreement of the parties, concluding that the purported Severance Agreement—the only such agreement presented in the summary judgment record—was void and unenforceable. That ruling is not challenged on appeal. Because no valid and enforceable severance agreement exists between the parties, Pruett cannot prevail on his claim that the

City owed him severance pay as a matter of law. Thus, the trial court properly rendered judgment based on the cross-motions for summary judgment.

Pruett asserts several other arguments in support of his breach of contract claim that are also unavailing. He argues that the "failure of the severance agreement does not invalidate the Ordinance," pointing to the Ordinance's severability clause which provides:

> **J. Severability.** If any section, paragraph, sentence, clause or phrase contained in this ordinance shall become illegal, null, or void, or shall be found to be against public policy or contrary to state or federal law, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void, the remaining sections, paragraphs, sentences, clauses or phrases contained in this ordinance shall not be affected thereby.

Pruett argues that "if the terms relating to the severance agreement are excised from the ordinance," then "the remaining sections leave a valid and complete ordinance."

This argument misapplies the intent behind the severability clause. "Severability is determined by the intent of the parties as evidenced by the language in the contract." *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 218 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). If a portion of the ordinance is determined to be unlawful or void, severing the remaining provisions may be proper "[i]f, when the [unlawful] portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent

17

legislative intent, wholly independent of that which was rejected. . . .” *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990). Here, however, no portion of Ordinance 2015-10 has been declared unlawful; rather, we have determined that the Ordinance as written did not, by itself, entitle Pruett to severance benefits. The severability clause cannot be used here to waive the requirement of a validly created and properly executed formal severance agreement.

Pruett further argues that the City's failure to secure a severance agreement should not excuse it from payment of the severance benefits. Pruett argues, “Generally, a party who 'prevents or makes impossible' the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability.” *See SLT Dealer Grp., Ltd. v. AmeriCredit Fin'l Servs., Inc.*, 336 S.W.3d 822, 831 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (“As a general rule, 'one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance.'”); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 519–520 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (opinion on remand). Pruett argues that “because the severance agreement is void for non-execution *by the City*, the City Council failed to perform its duties under the ordinance.”

The cases cited by Pruett involve circumstances in which one party was contractually obligated to perform certain "conditions precedent"—"conditions" that were more properly construed as "covenants." This Court in *SLT Dealer Group* recognized that "[c]onditions precedent may be either a condition to the formation of a contract or an obligation to perform an existing agreement." 336 S.W.3d at 830. We concluded in that case that the requirement that the appellee perfect a security interest in favor of the appellant "read in conjunction with the rest of the provisions" in the parties' agreement created "a covenant, not a condition." *Id.*

Similarly, in *Clear Lake City Water Authority*, the Fourteenth Court of Appeals considered an agreement between the water authority and a development company in which the authority agreed to purchase the developers' facilities subject to voter approval. 344 S.W.3d at 519–20. The court held that the water authority's failure to submit the required bond measure in the election did not excuse its performance. *Id.* (holding that water authority could not rely on projected failure of voter approval to escape its liability to purchase developers' facilities).

In contrast, here, we have already rejected Pruett's view that the Ordinance, standing alone, constituted an agreement of the City to provide him with severance benefits. As discussed above, the Ordinance set out conditions under which the

19

City could enter into severance agreements with certain employees. The City never entered into a valid severance agreement with Pruett prior to his resignation and the City's subsequent repeal of Ordinance 2015-10. Pruett has thus failed to show he was entitled to relief on this basis.

We overrule Pruett's challenge to the trial court's summary-judgment rulings.

## Attorney's Fees & Costs

In his second issue, Pruett argues that the trial court erred in denying his request for attorney's fees. He asserts that he was entitled to fees on his breach of contract claim and pursuant to the DJA. However, he was not a prevailing party on his breach of contract claim and thus is not entitled to attorney's fees on that basis. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8); *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (recognizing that to obtain attorney's fees pursuant to section 38.001, party must prevail on appropriate cause of action and recover damages).

Pruett also argues that he prevailed in the declaratory judgment action because the City never obtained declaratory relief, and, thus, he was entitled to his attorney's fees under Civil Practice and Remedies Code section 37.009. We observe, however, that the trial court granted the City's motion for summary

20

judgment and denied Pruett's. The trial court further stated that it declined to award attorney's fees to either party in this case.

The DJA provides that the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Thus, "the Declaratory Judgments Act allows fee awards to either party in all cases." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). The award of attorney's fees under the DJA is left to the discretion of the trial court and is not dependent on a finding that the party "substantially prevailed." *See Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Under section 37.009, a trial court may exercise its discretion to award attorneys' fees to the prevailing party, the nonprevailing party, or neither."). Given this broad grant of discretion and the facts of this case—including the nature of the dispute between the City and Pruett and the fact that the trial court denied Pruett's motion for summary judgment and granted the City's motion for summary judgment—we cannot say that the trial court abused its discretion in declining to award Pruett attorney's fees. *See Feldman*, 438 S.W.3d at 685.

Pruett also argues that he was entitled to recover costs pursuant to Rule of Civil Procedure 131. *See* TEX. R. CIV. P. 131 ("The successful party to a suit shall

recover of his adversary all costs incurred therein, except where otherwise provided."). The trial court's judgment did not address costs, and as noted above, Pruett cannot be considered the successful party. *See Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 189–90 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding that "successful party" is "one who obtains judgment of a competent court vindicating a civil right or claim"); *Henry v. Masson*, 453 S.W.3d 43, 50–51 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that when party alleges counterclaim, "if neither party is wholly successful on its claims, it is within the trial court's discretion to order each party to bear its own costs"); *see also Durant v. Anderson*, No. 02-14-00283-CV, 2020 WL 1295058, at *36 (Tex. App.—Fort Worth Mar. 19, 2020, pet. denied) (mem. op.) ("The plain language of Rule 131 does not expressly require an allocation of costs between unsuccessful parties.").

We overrule Pruett's challenge to the trial court's decision to deny his request for attorney's fees and costs.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Landau, Hightower, and Rivas-Molloy.

22